# BURNETTA v. MARCELINE COAL COMPANY, Appellant.

### Division Two, March 1, 1904.

1. **EVIDENCE: Employment: Adopting Contract Between Operators and Union.** The superintendent of a coal mine testified that when plaintiff came to him seeking employment he asked him if he understood the rules under which the mine was working, the days of payment, and so on, and he said he did. *Held*, that this testimony was not a sufficient foundation for the introduction of proof that the coal operators in this mining district had a contract with the miners' union, of which the plaintiff was a member, by which the miners were to be paid on the last Saturday of the month for the wages earned by them the first half of the month, for the reason that it did not show that plaintiff, in entering the employment of the company, adopted or made his own the contract between the mine operators and the miners' union. Plaintiff's statement that he understood the rules under which the mine was working, the days of payment, and so on, falls far short of constituting a contract that he would work for appellant under those rules, or in pursuance to a contract between the miners' union and the mine operators.

2. **EMPLOYMENT: Contract Made by Union: Validity.** A union labor organization can not, as such, make a contract for its individual members in respect to the performance of work and the payment for it.

3. ———: ———: **Must be Adopted by Individual Laborers.** A labor organization may agree with all the employers of its character of laborers in a certain district to pay their employees who belong to the union, or who do not belong to it, on certain fixed days, and the employers may, by separate agreement with the employees as they are employed, adopt that contract, and then it fixes the time of payment. But that date is fixed by the contract on the theory that the individual laborer and his employer mutually so agree, and not because the laborer is a member of the union which has undertaken to contract for him.

4. ———: ———: ———: **Member of Union: Inference.** A contract on the part of an individual laborer that he will perform certain work under the rules of a labor organization, is not to be inferred from the simple fact that he is a member of the organization.

Vol 180 mo—16

5. ———: **Time of Payment: Premature Suit.** If the work for which the employee sues has already been performed in full, and no contract of employment shows it was to be paid for at a later day, or at any day after it was performed, the suit is not prematurely brought.

6. ———: ———: ———: **Constitutionality of Miners' Statute: Theory of Trial Court.** And where such are the facts in a suit by a miner, the judgment for him will be affirmed by the Supreme Court because it was for the right party, and not because the trial court held that the wages were due under the miners' statute, and that that statute was constitutional.

7. **APPELLATE PRACTICE: Constitutionality of Statute: When Considered.** The Supreme Court will not consider the constitutionality of a statute when the rights of the parties to the suit and the matters in litigation can not be affected either by a holding that the statute is constitutional or by one that it is invalid.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*H. K. & H. J. West* for appellant.

The result of this case depends entirely upon the force and effect given to section 8791, Revised Statutes 1899.

*C. M. Kendrick* for respondent.

(1) Respondent was entitled to recover without regard to the fortunes of section 8791, Revised Statutes 1899, and would be entitled to judgment in the total absence of such an enactment. (2) All the provisions of section 8791, Revised Statutes 1899, may be reconciled with each other; the enactment is clearly within the limit of power placed upon the Legislature by the Constitution, and should be sustained.

FOX, J.—This suit was begun on June 16, 1900, before J. T. Laird, a justice of the peace of Marceline

township, Linn county, Missouri, upon the following ac-
count which was filed with the justice:

"George Burnetta.
    Amt. due per bill rendered........$21.57
    Wages at $2.00 per day, 7 days.. 14.00
    Total ........ ............ ....$37.57"

Plaintiff, in his suit before the justice of the peace,
filed a statement of his cause of action in two separate
counts. Upon appeal to the circuit court, his claim
upon the second count was stricken out by the court;
hence, it is only necessary, to a full comprehension of
the cause of action involved in this suit, to quote the
statement in the first count, which is as follows:

"Plaintiff states for his cause of action that on
the 24th day of March, 1900, he entered the employ of
the defendant as a miner of coal in its shaft at Marce-
line, Missouri, and remained in said employment. until
the 9th day of June, 1900. That on said 9th day of
June, 1900, defendant was indebted to plaintiff for ser-
vice rendered as such miner in the sum of $21.57, and
that said amount remains due and unpaid, although
plaintiff has demanded payment repeatedly. Where-
fore he prays judgment for the said sum of $21.57 with
costs."

There is practically no dispute about the facts in
this case.

"Respondent entered the service of appellant as a
miner of coal in the appellant's shaft at Marceline, Mis-
souri, on March 24, 1900, and continued in such employ-
ment until June 9th of that year, when he voluntarily
left the employ of appellant, performing all the re-
quirements of appellant in such cases, 'securing' his
place, that is, trimming and brushing it up, in order to
leave it in good condition, securing his 'clearance card'
thereby from the pit boss."

It is conceded that defendant was indebted to
plaintiff in the sum of $21.57; the only dispute is in re-

spect to the time when said indebtedness was due and payable.

There was $16.22 due respondent for work performed in May, and $5.35 for work performed in June. As before stated, respondent, on the 9th of June, voluntarily quit the employment of appellant. The 16th of June was one of the pay-days fixed by appellant; on that day, respondent's contract of employment having ended, he demanded the amount due him for labor done, both in May and June. Appellant was willing to pay the amount due for the work performed in May, but refused to pay the $5.35 for services rendered in June.

It is claimed by appellant that the amount sued for by plaintiff, for labor performed in June, was not due and payable until the 30th day of June. The testimony upon which this defense is predicated, is as follows:

Joseph Hemmings, for defendant, testified:

"I am superintendent of the defendant company. It is my duty to employ miners. I employed the plaintiff in the latter part of March, 1900. When he came to me I asked him if he understood the rules under which the mine was working, the days of payment, and so on. He said 'Yes.' I had no special talk with him further. The rules of the company were and are to pay its employees twice per month, on the nearest Saturday to the 15th and last. The nearest Saturday to the 15th and the nearest Saturday to the last of the month. We were always practically two weeks behind. For instance, if the plaintiff had earned any money from the first to the 15th of April it would be paid on the Saturday nearest to the last of April. It might or might not be two weeks behind."

"Defendant's counsel offered to show by this witness that in the operation of this mine, and other mines, the coal operators in this mining district, had a contract with the miners' union, of which this plaintiff is a member, by which the miners were to be paid in the way in which the defendant offered to pay the plaintiff.

Plaintiff's counsel objects. Court sustained the objection, and declined the offer of evidence, to which ruling of the court the defendant then and there excepted at the time.''

At the close of the evidence, the court, at the request of the plaintiff, declared the law as follows:

''1. The court construes the law to require that when the servant quits the employ of the master, voluntarily, the master is entitled to a reasonable time in which to pay the servant or employee the amount of wages due the servant or employee, and that in this case if by reason of defendant's custom, its regular day and time for the payment of employees and servants came on June 16, 1900, and plaintiff left the service of defendant on June 9, 1900, then the intervening time between said dates was such a reasonable time as defendant was entitled to, in contemplation of law, and the contract of employment and service between plaintiff and defendant having been terminated on said 9th day of June, then all wages due plaintiff from defendant were due and payable to plaintiff on said 16th day of June, 1900, and plaintiff had a right to sue for and recover the entire amount of wages due him from defendant.

''2. The court declares the law in this case to be as follows: When the plaintiff voluntarily left the service of the defendant company, and defendant company accepted plaintiff's action and issued to him its memorandum slip or duebill, showing the amount due plaintiff to date of his quitting service, and further accepted plaintiff's room or place in the mine, and issued to him its clearance, then the contract of employment, express or implied, existing between plaintiff and defendant, ceased by mutual consent and action of the parties.

''3. The court declares the law to be that the rule, custom or contract under which defendant company refused to pay plaintiff for wages earned in the month of

May (viz. $16.22) until the 15th of June, 1900, and as well also, the same rule, custom or contract under which defendant company refused to pay plaintiff for wages earned in the first half of June until the last Saturday in June, 1900, are contrary and repugnant to the provisions of section 8791 of the Revised Statutes of 1899, and are, therefore, null and void, and the court therefore further declares the law to be that if it finds from the evidence, that on and prior to the 1st day of June, 1900, the plaintiff had earned wages to the amount of $16.22, and thereafter, between the 1st and 9th of June, 1900, the plaintiff earned further wages to the amount of $5.35 and thereupon quit defendant's employ, the defendant became bound to pay plaintiff said $16.22 on or before June 1, and said $5.35 on or about the 15th day of June, 1900, and if the court further finds from the evidence that on the 16th day of June, 1900, the plaintiff demanded payment of said respective sums so earned in wages by him, and the defendant refused to pay plaintiff, then and in that event the finding and judgment of the court will be for the plaintiff, to-wit, the sum of $21.57, together with interest at the rate of 6 per cent per annum from June 16th, 1900, until the present time.''

The defendant then prayed the court to declare the law as follows:

''1.    If the court finds that section 8791 is unconstitutional, then under the evidence in this case its finding must be for the defendant as to the $5.35 earned during the first part of the month of June.

''2.    If the court sitting as a jury shall find from the evidence that at the time the plaintiff was employed by the defendant to work as a miner in defendant's coal mine at Marceline, Missouri, it was mutually agreed by and between the plaintiff and the defendant that he, the plaintiff, should be paid for his services as such miner according to the custom of the defendant that prevailed at that time, and if the court further finds

from the evidence that according to such custom, contract and agreement the wages of the plaintiff earned during the first part of the month of June, 1900, were not due until the Saturday nearest to the last day of June, then in that event the court declares as a matter of law that the wages of the plaintiff earned during the first part of the month of June, 1900, amounting to $5.35, were not due on June 16th, at the time this suit was brought, and that as to such $5.35 the plaintiff can not recover in this case.

"3. The court declares the law to be that section 8791 of the Revised Statutes of Missouri, 1899, is void and of no effect because it is contradictory and uncertain in its terms and not capable of being enforced.

"4. The court declares as a matter of law that section 8791 of the Revised Statutes of 1899, in so far as it undertakes to deprive the operators of coal mines and the miners and employees of such operators of the right and power to contract 'that at no pay day of any coal mining company shall there be withheld of the earnings of any coal mine employee any sum to exceed the amount due him for his labor for the days next preceding any such pay day' is in violation of section 4 of article 2 of the Constitution of Missouri, and is in violation of section 15 of article 2 of the Constitution of Missouri, and is in violation of the 14th amendment of the Constitution of the United States, and in violation of the 5th amendment of the Constitution of the United States.

"5. The court declares the law to be that section 8791 of the Revised Statutes of 1899, is unconstitutional in so far as it undertakes to render void any and all contracts and agreements between the operators and employees of coal mines with respect to the time when the wages of such employees shall be paid.

"6. The court declares the law to be that except for section 8791, Revised Statutes 1899, the plaintiff

can not recover in this case the $5.35 earned in the month of June.''

The court thereupon gave defendant's said declaration of law numbered 1, and refused those numbered 2, 3, 4, 5, and 6.

Upon the submission of the cause to the court, upon the evidence introduced and instructions given, it found the issues for the plaintiff and rendered judgment for the amount as claimed for labor performed, in May and June.

From the judgment, defendant prosecuted his appeal to this court.

It will be observed that the only question involved in this cause is in respect to the time of the institution of this suit.

It is admitted by appellant that the debt upon which this action is based is a valid and just one.

It is admitted that the plaintiff was entitled to judgment for $16.22, amount due for the labor performed in May; in fact, this amount, it is claimed, was tendered respondent, on the 16th of June.

It is admitted that the $5.35, for labor performed in June, is a valid obligation resting upon appellant, and that appellant intended to pay this amount on the pay day, June 30th; but it is contended that by contract with respondent, said last mentioned sum was not due and payable until the 30th day of June; hence, it is contended, this suit, as to that amount, was prematurely brought and that this cause should be reversed for that reason.

The contention relied upon by appellant upon which a reversal is sought in this cause, is: First, there was a valid and subsisting contract with the defendant at the time of entering the employ of appellant; that the consideration for his services were due and payable in accordance with a contract with the Miners' Union, of which respondent was a member. Second, that under said contract with said Miners' Union, the amount

claimed by respondent for the services performed in June, were not due and payable until the 30th of June. Third, that respondent's work having been performed as claimed by appellant, it is contended that section 8791, Revised Statutes 1899, which prohibits the making of such a contract of employment by a coal miner, is unconstitutional and void.

On the other hand, it is insisted by respondent that the only contract shown by the evidence in this cause, was the one implied by operation of law, when respondent entered the service of appellant to perform labor.

The sole testimony upon which appellant must rely to support his contention is that of the superintendent of the coal company.  He says: "I employed the plaintiff in the latter part of March, 1900.  When he came to me, I asked him if he understood the rules under which the mine was working, the days of payment and so on.  He said 'Yes.' "

This testimony was the only foundation laid for the offer made by defendant, that the coal operators in this mining district had a contract with the Miners' Union, of which this plaintiff is a member, by which the miners were to be paid in the way in which the defendant offered to pay plaintiff.  This offer was excluded by the court, and correctly so, for the reason there was no sufficient showing that plaintiff, in entering the employment of appellant, adopted the contract as made by the organization known as the Miners' Union, nor was there any testimony making the contract of the miners' union any part of the contract of the plaintiff.

Plaintiff's statement that he understood the rules under which the mine was working, the days of payment and so on, falls far short of constituting a contract that he would work for appellant under those rules, or in pursuance of a contract made by the Miners' Union. The plaintiff and defendant were competent to contract, and if any conditions were to be imposed, the terms of the contract, at the time it was made, must express

them. In the conversation with the superintendent, not a word of reference to any contract by the ''Miners' Union'' is made. The mere statement that ''I understand the rules,'' by no means is to be construed as an agreement to labor under certain rules. He may have understood the rules; but there is absolutely nothing further said, upon which to base an agreement, that the work he was then about to perform would be done under the conditions fixed by said rules. If defendant desired conditions as to payment for the labor performed, it should have made known the terms of the condition and then the plaintiff could have voluntarily accepted or rejected the proposition.

The Miners' Union is not an organization for the purpose of conducting any business enterprise, but is purely one for the protection of labor against the unjust exactions of capital. The members of the union do not labor in coal mines for the organization, but each member works for himself, and whatever compensation he receives is for the benefit of himself and his family. That the Miners' Union, as an organization, can not make a contract for its individual members, in respect to the performance of work and the payment for it, in our opinion is too clear for discussion. [Richmond v. Judy, 6 Mo. App. 465.]

While it may be true that a labor organization may have rules requiring the employer to designate a certain pay day, and if you employ a member of the organization or even one who is not a member, and by agreement his services are to be paid on the designated pay days, as established by the rules, it could well be insisted that the contract fixes the time of payment, that is, upon the theory that the individual so contracts, and, by no means, upon account of his being a member of the organization which has undertaken to contract for him.

A contract, on the part of an individual, that he will perform certain work under the rules of an organ-

ization, is not to be inferred from the simple fact that he is a member of the organization. Persons work for themselves and are free and independent. Agreements imposing conditions can only be enforced when the entire proposition has been stated and by them freely accepted.

There being no express agreement between plaintiff and defendant as to the performance of the work involved in this suit, or to the time of payment for it, the law, by implication, fixes the status of the parties in respect to such work and when the consideration for it becomes due and payable.

Upon the facts as disclosed by the record in this cause, we have reached the conclusion that this suit was not prematurely brought.

There is no valid legal reason assigned by appellant for its effort to delay the payment of the $5.35, which it admits is due plaintiff for labor performed in the month of June. The law was properly declared in instructions numbered 1 and 2, and the judgment of the court was clearly for the right party and its judgment will not be disturbed.

Having reached this conclusion, it is unnecessary to pass upon the constitutional question presented.

. While it may be conceded that the instructions of the court indicate that the conclusion reached by the trial court in the disposition of this cause was upon the theory that section 8791, supra, was a valid enactment, we are not dealing with the reasons of the trial court for reaching its conclusion, but with the result of its action. [State ex rel. v. Smith, 141 Mo. 1; State ex rel. O'Briant v. Railroad, 176 Mo. 443.]

While the court will not hesitate to express its views upon the validity of a statute, when the rights of a citizen are in any way affected by it, regardless of the amount which may be involved, yet we feel that such expression can serve no good purpose in a case where the conclusions reached upon such statement would af-

ford no relief to either party in the cause pending before us.

If defendant simply desires a discussion and determination of the constitutionality of the statute, which concerns its business, this court would much prefer that a cause be presented in which the result of the conclusion reached would amount to something.

The judgment in this cause was manifestly for the right party, and is affirmed.

All concur.