### PANHANDLE & S. F. RY. CO. v. WILSON.
### No. 3924.

Court of Civil Appeals of Texas. Amarillo.
Dec. 14, 1932.

Madden, Adkins, Pipkin & Keffer, of Amarillo, and Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Chas. Nordyke, of Lubbock, for appellee.

HALL, C. J.

The appellee sued the railway company, alleging in substance that on or about July 15, 1931, he was employed by the defendant as a pumper at Littlefield. That by the terms of the contract of employment he acquired a certain seniority as employee. That he was receiving a salary of $110 per month and was classified as a pumper under section 3 of the contract which fixed the seniority of employees. That the contract further provided that the senior men of a certain class in a seniority district should be retained upon the reduction of the force or the number of employees. That under the contract he had cer-

tain grievances against the defendant which defendant had under advisement and during that time he was unjustly dismissed from the services, although his seniority was greater than the employee who displaced him as a pumper. That by reason of the fact that he was wrongfully discharged, he sustained damages in the loss of two months' salary aggregating $220 and during the time was required to pay $40 for house rent and the expense of moving. That he was again employed by the defendant on September 15, 1931, and that the loss sued for was incurred by reason of his wrongful discharge.

In its answer the defendant alleges substantially that the company employed plaintiff in 1920 as a fuel foreman at Dermott. That afterward, in 1926, it employed plaintiff at Littlefield as fuel foreman, and that on January 1, 1929, he was employed at Pyron as a pumper. That he was removed from Littlefield to Pyron because of his inability to perform the duties of a fuel foreman at Littlefield. That at the time of and during his employment there were certain rules of agreement under which he was employed, and by such rules the plaintiff acquired seniority as fuel foreman from the time he was employed at Dermott until he moved from Littlefield to Pyron, at which latter place he was employed as a pumper. That when he moved to Pyron he lost his seniority as a fuel foreman and began to acquire seniority as a pumper. That in reduction of the number of employees on July 15, 1931, the plaintiff went out of the service by reason of the fact that he was the youngest pumper in so far as seniority was concerned, on the division where he worked. That after he went out of the service he selected R. K. Corkhill and G. C. Correl under the said rules to present his claim to the company and seek re-employment. That he gave said parties full authority to protect his interest or make whatever agreement was necessary to secure re-employment. That his said representatives agreed with the company that if it would again employ the plaintiff, they would waive any claim for compensation to plaintiff during the time he was out of the service. That on September 15, 1931, in view of the agreement, plaintiff was again employed by the company and thereafter filed his claim for the amounts set out in his petition. That plaintiff accepted compensation as a fuel foreman from 1920 to January 1, 1929, and from that day was classified and paid as a pumper. That the company had a right to classify its employees. That the employee who took plaintiff's place at the time plaintiff was discharged on account of a reduction in the force had more years of service as a pumper than the plaintiff, and that, in fact, the plaintiff was the youngest pumper on the division.

The rules of the company which constitute the contract under which the plaintiff was employed provide, in part, as follows:

"Article I. Sec. 1. Seniority in each class of service begins at the time the employee last enters the continuous service of the Company in that class on the seniority districts."

"Sec. 3. Seniority is confined to the following separate classes and to the territory under the jurisdiction of one superintendent except as provided in Sec. 5: * * *

"9. Pumpers and water treaters.

"10. Fuel foreman.

"Sec. 4. In reduction of force, the senior men of the class on the seniority district, capable of doing the work, shall be retained. In reduction of force, employees will displace those in their own class with the least seniority. The employees so displaced may in turn displace the employees in the next lower class with the least seniority."

Article 3, sections 1 and 2, provide, in substance, that when an employee believes he has been unjustly dealt with, he may choose an employee to represent him and take his case to the roadmaster or general foreman, and if not satisfied with the decision of that official, he may appeal to higher officers of the company. Section 7 of article 3, provides: "If, after investigation, it is found that an employee has been unjustly suspended or dismissed from the service, such employee shall be reinstated with seniority rights unimpaired and compensated for the wage loss, if any, resulting from said suspension or dismissal."

The case was submitted to the jury upon two issues, as follows:

"(1) Do you find from a preponderance of the evidence that the plaintiff W. R. Wilson was entitled to a seniority as a pumper in his employment by this defendant, Panhandle & Santa Fe Ry. Co., on Sept. 15, 1931?"

This was answered in the affirmative.

(2) If answered in the affirmative, then "Do you find from a preponderance of the evidence that the witnesses Corkhill and Correl had authority from plaintiff W. R. Wilson, to waive the claim in the sum of $220.00 made by the plaintiff against the defendant company as the representatives of the said Wilson in a conference with the witness Mr. Dyer, who represented the defendant Panhandle & Santa Fe Ry. Co.?"

This was answered in the negative.

Based upon this verdict the court rendered judgment in favor of Wilson for $220 and interest.

The defendant requested two special issues as follows, which the court refused:

(1) "Was the plaintiff's seniority as a pumper extended back to 1920 upon condition that he would not be entitled to the two months pay while out of the service of the defendant?"

(2) "Were Corkhill and Correl authorized as agents of the plaintiff to accept re-employment of the plaintiff by the defendant upon condition that plaintiff would not be entitled

to pay for time while out of the services of the defendant company?"

The first contention is that the court erred in refusing to direct a verdict for the appellant. This is overruled.

Appellant requested the court to submit the following issue, which should have been submitted: "Was the plaintiff's seniority as a pumper extended back to 1920 upon the condition that he would not be entitled to the two months pay while out of the service of defendant?"

The appellant also objected to special issue No. 1 submitted by the court because: (1) It submits a question of law and fact; (2) which should have been determined by the court in the construction of the contract of employment in the light of the facts. We sustain both contentions.

It appears from the record that there is some sort of a written contract or agreement between the appellant railway company and a trade union composed of its employees. The agreement itself was not introduced in evidence and we have no information as to its provisions further than as above set out and section 6 of article 3, which provides as follows: "Prior to the assertion of grievances as hereinafter provided and while questions of grievances are pending, there will neither be a shut down by the employer nor a suspension of work by the employees."

The officials of the appellant railway company testified that under the agreement the company had the right to classify its employees. This testimony was admitted without objection and is not contradicted. The first issue submitted by the court asked the jury if they found from a preponderance of the evidence that Wilson was entitled to a seniority as a pumper in his employment by this defendant on September 15, 1931. As stated, this submitted to the jury a question of law without any finding as to the facts upon which their answer must necessarily be based, and, moreover, the answer is not supported by the evidence. The record shows that from 1920 to 1929 he was classified as a fuel foreman. That he served in that capacity and accepted the wages which were paid to employees of that class. The fact that he served as a fuel foreman at some stations where he occasionally pumped water is immaterial. The act of pumping water occasionally would not operate to change his classification without the consent of the railway company which, as stated by its witnesses, had the right to fix his classification. He accepted employment as a fuel foreman from 1920 until 1929 and was paid the wages customarily paid to employees of that class. This testimony tends strongly to show that he was not classified as a pumper during that time. Again, on September 10, 1931, he wrote to W. B. Storey, president of the appellant

company, complaining that he was suspended from service before he was given his seniority either as fuel foreman or pumper—"this position I held for eight years and pumper for two years." In the face of his direct statement that he held the position of fuel foreman for eight years, it is difficult to understand how the jury could find that he was entitled to seniority as a pumper during that period. The record shows without dispute that he was discharged because it became necessary for the company to reduce the number of its employees. At the time of his discharge he was serving as pumper, and under the seniority rule set out above as sections 1 and 4 of article 1, he was properly discharged. For these reasons the answer of the jury in response to issue No. 1 is not supported by the evidence. It further appears from the record that plaintiff's seniority as a pumper was dated back to 1920 at the request of Corkhill and Correl, who seem to hold some kind of an official position in the employees' association. Whether their powers and authority are set out in the contract, and the extent of such authority, does not appear from the record. The company claims that Wilson was reinstated as a pumper as of the year 1920 upon condition that he would waive his right to two months' pay while out of the service after he had been discharged by the company in reducing its force. If his seniority rights were not violated when he was discharged, then the act of the company in reinstating him as a pumper dating his classification back to 1920 was purely a matter of grace and the company had the right to make the classification upon the condition that Wilson would not be entitled to the two months' pay which he claims in this suit. Therefore, the court should have submitted the first interrogatory requested by the appellant inquiring whether that condition was a part of the agreement to extend Wilson's seniority back to 1920. If this issue had been submitted and the jury had answered it in the affirmative and had further found that Wilson accepted employment upon that condition or that Corkhill and Correl were authorized to accept employment for him upon such condition, he would not have been entitled to recover. On the other hand, if the jury had answered the issue in the negative, then there was no contract between Wilson and the company, because the minds of the parties to the agreement had not met.

We think the court erred in refusing to give the second special issue requested by the appellant. If Corkhill and Correl, as officers of the employees' association, were authorized by the contract to represent members of the association in the settlement of their grievances, then the appellee would be bound by the condition as stated. If the terms of the contract did not authorize Corkhill and Correl to accept employment for Wilson upon the conditions stated, then Wilson's assent to the condition would be necessary to bind him.

The rule is that individual members of a labor union are not bound by contracts between the union and employers unless such agreements are ratified by the members of the union as individuals, and that in the absence of evidence of such ratification by a member, no rights accrue to him which he can enforce against the employer. It has been pointed out that the ordinary function of a labor union is to induce employers to establish usages in respect to wages and working conditions which are fair, reasonable, and humane, leaving to each of its members to determine for himself whether and for what time he will contract with reference to such usages. It has, therefore, been decided that a labor union, in contracting with an employer with respect to wages and conditions of service, does not establish contracts between its individual members and the employer, a breach of which will sustain actions by the individuals. 16 R. C. L. 425; 24 Cyc. 824; Hudson v. Railway Company, 152 Ky. 711, 154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98, and note; Burnetta v. Marceline Coal Co., 180 Mo. 241, 79 S. W. 136.

While there is no direct testimony showing that Wilson as an individual ever assented to the contract made between the railway company and the employees' association, the case was tried upon that assumption in the lower court and is decided upon the same theory in this court.

The appellant insists that special issue No. 2 given by the court assumes that Corkhill and Correl did not have the right under article 3, § 7, of the agreement to find and agree with the representatives of the railway company that the plaintiff was not unjustly suspended or dismissed from the services of the railway company.

As stated above, the written agreement was not introduced in evidence. Section 7 of article 3 gives them no such authority, and in the absence of evidence and an express finding as to their authority, we are not prepared to express an opinion upon this contention.

Because of the errors discussed, the judgment is reversed, and the cause is remanded.