BRYANT ARNOLD ET AL. V. FOREST HANNA and C. P. ANDERSON, Appellants.

Court en Banc, October 8, 1926.

**1. INJUNCTION: To Prevent Enforcement of Invalid Statute.** Injunction to prohibit the enforcement of an invalid statute is an appropriate remedy.

**2. CONSTITUTIONAL LAW: Title: More Than One Subject: Farm Products.** A title to "an act to regulate commission merchants in farm products, herein defined" clearly indicates that language will appear in the act defining commission merchants in farm products and declaring what commission merchants will come within its operation, and is not double. It is not necessary that the title go into details and indicate how commission merchants are to be defined in the body of the act.

**3. ———: ———: Remittances.** A clause in the title saying that the act is one "regulating the duties" of commission merchants in farm products "with respect to accounting and remittances" indicates that the body of the act will require certain contracts with reference to remittances to be in writing.

**4. ———: ———: Accounts: Burden of Proof.** A title indicating that the entire duty of commission merchants with respect to accounting by them with their consignors will be dealt with in the act is sufficiently comprehensive to indicate that the body of the act will place upon the commission merchant the burden of proof to establish the accuracy and correctness of his accounts of sale.

**5. ———: ———: Purchase from Consignor without Written Authority: Reasonable Regulation.** Where the title clearly indicates that the body of the act will declare certain acts of commission merchants to be offenses and will fix penalties therefor, a provision in the body making it a misdemeanor for a commission merchant to purchase, directly or indirectly, goods re-

ceived by him without prior written authority from the consignor, is not only germane to the title, but is a reasonable regulation.

6. ———: **Commission Merchants: Regulation: Lawful Business: Abuse of Police Power.** Laws regulating commission merchants dealing in hay and straw come within and are justified by the police power of the State, and if they make no unjust or unreasonable discriminations are not an unreasonable abuse of the police power. Such laws are designed to protect persons engaged in agricultural pursuits, more or less remote from market, from imposition and actual fraud when intrusting their produce into the hands of a commission merchant for sale; and it is no argument against the statute to say that the commission merchant is engaged in a legitimate business and for that reason is not subject to police regulation, where the public welfare demands such regulation.

7. ———: ———: **License: Bond.** The provisions of the statute (Laws 1925, p. 121) requiring commission merchants to take out a license, to give bond, to keep accurate books and records, and to submit to supervision by officers of the State, are a legitimate exercise of the police power.

8. ———: **Discrimination: Commission Merchants: Reasonable Classification.** An act regulating commission merchants dealing in hay and straw, and exempting from its operation dealers in live stock and grain, is not unreasonably discriminatory, nor does it, by such exemption, deprive such merchants of the equal protection of the laws: It does not make an arbitrary or unreasonable classification. There are valid reasons for the exemption, well grounded in common knowledge and of which the Legislature had the right to take cognizance. And if there is not apparent sufficient reason for exempting grain, the answer is that the Legislature may have deemed shippers of grain already amply protected by the existing statute (Art. 2, Chap. 49, R. S. 1919) when the Act of 1925 regulating commission merchants dealing in hay and straw was enacted.

9. ———: **Burden on Interstate Commerce.** A statute regulating commission merchants dealing in hay and straw, which concerns itself merely with the conditions under which they shall engage in the business in this State, requiring their books and records and accountings to be kept in prescribed ways, exacting of them a license and a bond, and empowering officers of the State to inspect their books for the purpose of ascertaining if it is being complied with and to revoke the license of the offending merchant, and which neither purports nor undertakes to deal directly with the commodities handled by them, but leaves them entirely free to deal with any commodities, regardless of their grade or condition, and to contract in respect thereto in any manner they wish, and which expressly declares that its provisions are to be confined to the competence of the State over the particular subject-matter, only indirectly and incidentally affects commerce among the States, and is not a regulation of interstate commerce or an undue intrusion upon the appropriate field of Federal jurisdiction.

10. ———: **Unreasonable Search and Seizure: Self-Incrimination: Examination of Books: Separable Provisions.** The provisions of the Commission Merchants Act (Laws 1925, p. 121) empowering the State Marketing Commissioner to examine the books and records of commission merchants, to take copies thereof and to require affidavits from them, under penalty of forfeiture of license, are not essential to the scheme of police regulation expressed in the act, and may be eliminated and a complete statutory scheme of regulation would remain, which would be enforcible and would be of great value to shippers and producers, and the act itself provides that "the invalidity of one or more provisions shall not affect the remainder of the act," thereby indicating that the Legislature would have enacted the act if those provisions had been omitted, and therefore whether those provisions constitute unreasonable search and seizure and compel commission merchants to incriminate themselves and violate the State or Federal Con-

stitution is not decided in this case, wherein commission merchants seek to enjoin the enforcement of the act, and there is no charge that there has been an inspection of their books or an attempt to impose the penalty.

11. ———: **Hearing: Unequal Protection: Presentation of Evidence.** The power broadly challenged by this suit to enjoin the enforcement of the Commission Merchants Act being the power of the State to require commission merchants to take out a license and to give bond as such and to submit to valid provisions of the act, the court is not concerned with the validity of mere details of the act, the invalidity of which, if invalid, would not overthrow the rest of the act; and therefore whether separable provisions of the act deprive commission merchants of the equal protection of the laws, in that at hearings provided for before the State Marketing Commissioner they are not by the act given equal opportunity to secure and present evidence as is given those making complaints against them, is a question not decided, since such provisions are mere details in the enforcement of the act, and no hearing has been had and no attempt to revoke a license has been made.

12. ———: **Enlarging Powers of State Board of Agriculture.** The General Assembly has power to add to or take from the powers and duties of the State Board of Agriculture, and to create the State Marketing Bureau and place it under the control of the Board, and to confide to the State Marketing Commissioner appointed by the Board the power and duty to administer the provisions of the Commission Merchants Act. Such power is not denied to the General Assembly by the Constitution, and unless a power is denied by the Constitution to the General Assembly it can enact any law it sees fit to enact.

---

Corpus Juris-Cyc. References: **Commerce,** 12 C. J., Section 36, p. 36, n. 20; Section 60, p. 50, n. 89 New. **Constitutional Law,** 12 C. J., Section 168, p. 748, n. 9, 10; p. 749, n. 15, 17; Section 331, p. 848, n. 7 New; Section 390, p. 887, n. 38; Section 392, p. 894, n. 8, 9; Section 855, p. 1129, n. 18. **Factors,** 25 C. J., Section 7, p. 344, n. 67, 69; p. 345, n. 79, 80, 83 New; Section 8, p. 346, n. 94. **Farm,** 25 C. J., p. 673, n. 45 New, 48. **Injunctions,** 32 C. J., Section 443, p. 281, n. 58 New. **Statutes,** 36 Cyc., p. 976, n. 27; p. 983, n. 60; p. 1045, n. 5.

Appeal from Jackson Circuit Court.—*Hon. Fred W. Coon,* Judge.

REVERSED.

*North T. Gentry,* Attorney-General, *George W. Crowder,* Assistant Attorney-General, for appellant.          •

(1) The act here challenged, passed in 1925, was taken almost bodily from an act passed by the State of Kansas. Kansas Session Laws 1915, p. 479, chap. 371. The Kansas Act was held constitutional in 1916. State ex rel. v. Mohler, 98 Kan. 465, 248 U. S. 112. (2) Where all the provisions of an act fairly relate to the same subject, have a natural connection with it, and are the incidents or means of accomplishing it, the subject is single, and if sufficiently expressed in the title the statute is valid under Sec. 28, art. 4, Mo. Constitution. State ex inf. Barrett v. Hedrick, 294 Mo. 21; State ex rel. v. Gordon, 261 Mo. 631; State ex rel. v. Vandiver, 222 Mo. 206; State v. Brodnax, 228 Mo. 53; Elting v. Hickman, 172 Mo. 237; State v. Miller, 45 Mo. 495; State ex rel. v. Mohler, 158 Pac. 411. The provisions of the Constitution with respect to the title of an act, while mandatory,

are to be liberally construed in support of the legislative power. The main object of this constitutional provision is to prevent surprise or fraud on legislators, so as to thwart what is sometimes called "log-rolling" legislation. If the title indicates the general contents of the bill it meets the constitutional requirement. Asel v. City of Jefferson, 287 Mo. 195; State ex rel. v. Buckner, 300 Mo. 359; State v. Mullinix, 301 Mo. 385; State ex rel. v. Hackmann, 292 Mo. 27; Ex parte Hutchens, 296 Mo. 331; Burge v. Railroad, 244 Mo. 76; Ferguson v. Gentry, 206 Mo. 189; State v. Laughlin, 75 Mo. 147; O'Brien v. Ash, 169 Mo. 283; State v. Doerring, 194 Mo. 398; State ex rel. v. Roach, 258 Mo. 541; State ex rel. v. Drabelle, 258 Mo. 568. (3) The act rests upon the police power of the State, and is within that power. Mo. Constitution, art. 1 sec. 2; State ex inf. v. Mer. Exch., 269 Mo. 346; Ex parte House v. Mayes, 227 Mo. 617; Valley Spring Hog Ranch Co. v. Plagman, 282 Mo. 1. (a) There is no denial of due process of law. Laws 1925, p. 124, sec. 6; State ex rel. Hurwitz v. North, 304 Mo. 607; Carson v. Ry Co., 184 S. W. 1339; St. Louis v. Baskowitz, 273 Mo. 543. (b) There is no denial of the equal protection of the law. The equal protection clause of the United States Constitution does not prohibit the State from classifying subjects of legislation, and the classification, before it will be held unconstitutional, must be clearly arbitrary and not merely possibly so. Denny v. City of Muncie, 149 N. E. 639; Hawkins v. Smith, 242 Mo. 696; Davy v. McNeill, 240 Pac. 482; Klein v. Maravelas, Ann. Cas. 1917 B, 273; Danville Warehouse Co. v. Co-op. Assn., 129 S. E. 739. (4) The police power of the State is extended to the making of legislative regulations upon any trade, calling or occupation where the nature of the business is such that, unless regulated, many persons may be exposed to misfortunes or fraud, against which legislation can properly protect them, and this is true notwithstanding the business itself is an honest one and honestly conducted. 12 C. J. 922; Gregory v. Hecke, 238 Pac. 787; Bazemore v. State, 49 S. E. 701; Cosgrave v. Augusta, 68 Am. St. 149, 42 L. R. A. 711; Hawthorne v. People, 500 Am. Rep. 610; People v. Freeman, 17 Ann. Cas. 1098; Knight Co. v. Miller, 139 Am. St. 389; State v. Ice Cream Co., 147 N. W. 195; State v. Holton, Gray & Co., 126 N. W. 1125; State ex rel. Brewster v. Mohler, 98 Kan. 465, 248 U. S. 112; Squire v. Tellier, 102 Am. St. 323; State ex rel. v. Wagener, 77 Minn. 483, 77 Am. Rep. 681; Biddles v. Police Commissioner, 39 A. L. R. 766; People v. Beakes Dairy Co., 3 A. L. R. 1260; Musco v. Surety Co., 196 N. Y. 459, 134 Am. St. 851; State v. Co-op. Co., 131 S. W. 1067, Ann. Cas. 1912C, 248; Allen v. Riley, 203 U. S. 347, 51 L. Ed. 216, 8 Ann. Cas. 137; Brazee v. Michigan, 241 U. S. 340, Ann. Cas. 1917C, 522; Engel v. O'Malley, 219 U. S. 128. (a) The bond required by the act is a lawful exaction, considering the nature of the business; and the amount thereof was a question for the Legis-

lature only. Hawthorne v. People, 50 Am. Rep. 610; State ex rel.
v. Mohler, 98 Kan. 465; State ex rel. v. Wagener, 77 Minn. 483, 77
Am. St. 681; People v. Beakes Dairy Co., 222 N. Y. 416, 3 A. L. R.
1260; Musco v. United Surety Co., 196 N. Y. 459, 134 Am. St. 851;
Portland v. W. U. Tel. Co., 75 Ore. 37, L. R. A. 1915D, 260; Fergu-
son-Hendrix Co. v. Fidelity Co., 140 Pac. 700; State v. Bowen &
Co., 149 Pac. 330, Ann. Cas. 1917B, 625. (b) It is within the pow-
er of the State to also designate the kind of bond required, and to
limit the same to a surety bond and no other. Ferguson-Hendrix Co.
v. Fidelity Co., 79 Wash. 528, 140 Pac. 700. (c) The exercise by
a State of its regulatory powers upon businesses affected with a public
interest is not an assertion of paternalism, nor is it an intermeddling
with the rights of private businesses. People v. Beakes Dairy Co.,
222 N. Y. 416, 3 A. L. R. 1268. It is proper to mention at this point
the case of People ex rel. v. Berrien, 124 Mich. 664, where it was held
that an act for the regulation and licensing of commission merchants
dealing in farm products was unconstitutional. The Michigan de-
cision seems to stand solitary and alone. It was severely criticized by
the Supreme Court of Kansas in State ex rel. Brewster v. Mohler, 158
Pac. 408, where exactly the same subject of litigation was involved.
(5) The act does not violate Sec. 8, art. 1, Constitution of the
United States, which confers upon Congress the power to regu-
late interstate commerce. It relates to business intrastate in charac-
ter, is not an *attempt* to regulate interstate commerce, and does not,
in any sense, fetter interstate commerce: State ex rel. v. Public
Service Comm., 297 Mo. 131; State v. Brodnax, 228 Mo. 25; Brodnax
v. Missouri, 219 U. S. 285. The mere fact that some of the commodi-
ties dealt in by commission merchants in Missouri may or do actually
move in channels of interstate commerce is not enough to condemn
the act as being in violation of the commerce clause in the Federal
Constitution, since that fact would, at most, only incidentally or in-
directly affect interstate commerce. State v. Wagener, 46 L. R. A.
442; Commonwealth v. Disanto, 131 Atl. 489; Hump Hairpin Co.
v. Emmerson, 258 U. S. 290; Savage v. Jones, 225 U. S. 501, 56 L.
Ed. 1182; Standard Stock Food Co. v. Wright, 225 U. S. 540; Sonne-
born v. Cureton, 262 U. S. 506, 67 L. Ed. 1095; Hendrick v. Mary-
land, 235 U. S. 610; Fox Film Corp. v. Crumbull, 7 Fed. (2 Series)
724; Sioux Remedy Co. v. Cope, 235 U. S. 197, 59 L. Ed. 193; Plum-
ley v. Massachusetts, 155 U. S. 461; Patapsco Guano Co. v. N. Caro-
lina, 171 U. S. 345; Sligh v. Kirkwood, 237 U. S. 52, 59 L. Ed. 838;
Asbell v. Kansas, 209 U. S. 251; Chicago Ry. Co. v. Arkansas, 219
U. S. 453, 55 L. Ed. 290. (6) The act does not attempt to confer
*arbitrary powers* of inquisition and inspection upon the marketing
commissioner. Its requirements are only such as are reasonably neces-
sary to the proper regulation of the business of commission merchants,

and it does not violate Sec. 11, Art. II, of the Constitution with respect to searches and seizures. Ex parte Kneedler, 243 Mo. 632; St. Joseph v. Levin, 128 Mo. 588; In re Conrades, 112 Mo. App. 21; St. Louis v. Baskowitz, 273 Mo. 543; Hawkins v. Smith, 242 Mo. 688; Halden v. Hardy, 169 U. S. 366. (7) The requirements of the act relative to furnishing affidavits and papers which may disclose the nature and character of the dealings of commission merchants with their customers is a proper requirement in the interest of the public, and does not compel the furnishing of evidence against themselves within the meaning of Sec. 23, Art. II, Constitution of Missouri. Ex parte Kneedler, 243 Mo. 632; United States v. Mulligan, 268 Fed. 893; People v. Schneider, 5 Ann. Cas. 790.

*Charles M. Blackmar* and *R. Harrison Field* for respondents; *Haff Meservey, Michaels, Blackmar & Newkirk* of counsel.

(1) Injunction is the proper remedy to test the validity of the law. State ex rel. Chase v. Hall, 297 Mo. 594. (2) The act is (a) an unreasonable abuse of the police power of the State; and (b) discriminatory in that it exempts from the operation of the bill dealers in live stock and in grain. Sec. 13065, R. S. 1919; Kansas City v. Grush, 151 Mo. 128; People ex rel Valentine v. Coolidge, 124 Mich. 664, 50 L. R. A. 493; Hawkins v. Smith, 242 Mo. 688; State ex rel. Wyatt v. Ashbrook, 154 Mo. 394; Sec. 12144, R. S. 1919; Laws 1925, p. 121; State ex rel Beck v. Wagner, 77 Minn. 483; State ex rel. Brewster v. Mohler, 98 Kan. 465, 63 L. Ed. 152; Ferguson-Hendrix Co. v. Fidelity Co., 79 Wash. 528; State v. Powles & Co., 155 Pac. 774; Section 1, art. XIV, Amendments, U. S. Constitution. (3) The act places a burden upon interstate commerce. Sec. 8, art. 1, U. S Constitution, Act of Congress, February 10, 1925, 43 Statutes, 822, 844, 845; Act of Congress, August 11, 1926, C. 313, 39 Stat. 482; Act of Congress, August 15, 1921. C. 64, par. 1, 42 Stat. 159; Stafford v. Wallace, 258 U. S. 515; Lemke v. Farmers' Grain Co., 258 U. S. 50; Binderup v. Pathe Exchange, 263 U. S. 291; Dahnke-Walker Mill Co. v. Bondurant, 257 U. S. 282. (4) The inquisitorial powers conferred upon the State Marketing Commissioner to inspect and take copies of the books, ledgers, papers, etc. of the plaintiffs is an unreasonable search and seizure. The requirement of the statute by which, upon demand from the State Marketing Commissioner, the plaintiffs must make certain affidavits, amounts to self-incrimination. Sec. 7. p. 125, Laws 1925; Boyd v. United States, 116 U. S. 618; Hale v. Henkel, 201 U. S. 43, 14 L. R. A. 407; People ex rel. Ferguson v. Reardon, 196 N. Y. 236, 27 L. R. A. (N. S.) 141; State ex rel. Attorney-General v. Simmons Hardware Co., 109 Mo. 118; State v. Thomas, 250 Mo. 212; State ex rel. v. Chemical Works,

249 Mo. 702; Counselman v. Hitchcock, 142 U. S. 547, 35 L. Ed. 1110; Sec. 860, R. S. 1919; Glickstein v. United States, 222 U. S. 136, 56 L. Ed. 128; United States v. Mulligan, 268 Fed. 893; Wilson v. United States, 221 U. S. 361; Ex parte Chapman, 153 Fed. 371; St. Louis v. Baskowitz, 273 Mo. 543; St. Joseph v. Levin, 128 Mo. 588; State v. Davis, 108 Mo. 666; Ex parte Kneedler, 243 Mo. 632; Articles IV & V of the Amendments to U. S. Constitution.  (5) The State Board of Agriculture is a corporation created by the Legislature for certain definite purposes, and the Legislature was without power to delegate to it or any employee of the Board the matters attempted to be delegated by the act under discussion.  Laws 1863, p. 43; G. S. 1865, sec. 1, p. 319; R. S. 1919, secs. 11933, 11939 to 11942; Sec. 12143, Laws 1925, p. 119; Sec. 12145, Laws 1925, p. 120.  (6)  The act embraces more than one subject and contains matters which are not clearly expressed in its title and which are entirely outside of the title thereof.  Sec. 28, art. 4, Mo. Constitution; Williams v. Railroad, 233 Mo. 666; State v. Burgdoerfer, 107 Mo. 30; State v. Great Western Coffee & Tea Co., 171 Mo. 643; Kansas City v. Payne, 71 Mo. 162; St. Louis v. Weitzel, 130 Mo. 616.  (7) The act deprives the plaintiffs of equal protection of the laws of this State in that the hearings provided for before the commissioner do not give the commission merchants an equal opportunity to secure and present evidence as is given his adversary.  Sec. 1, art. 14, U. S. Constitution; State ex rel. Farber v. Shot, 304 Mo. 523; State ex rel. Hurwitz v. North, 304 Mo. 607.  (8)  The State Marketing Commissioner is an employee of the State Board of Agriculture, a corporation, and the Legislature has no authority to confer the powers of the act upon him, and to authorize the State Marketing Commissioner to delegate those powers to others.  Paragraph C, sec. 1, Laws 1925, p. 122; Sec. 12143, Laws 1925, p. 119; Secs. 6781, 6782, 5888, 5889, R. S. 1919.

BLAIR, C. J.—This is an action by certain commission merchants dealing in hay and straw at Kansas City, Missouri, to enjoin Forest Hanna, Prosecuting Attorney of Jackson County, and C. P. Anderson, State Marketing Commissioner, from enforcing the provisions of "an Act to regulate commission merchants in farm products," etc., as same appears in Laws of 1925, page 121.  The trial court overruled defendants' demurrer to the petition.  They stood on their demurrer, refused to plead over and suffered judgment, from which an appeal was granted to this court.

The facts in the case, as gleaned from the petition, are that respondents are "engaged in the business of selling hay and straw in car-loads upon commission, of buying hay and straw in car-loads both for their own account and for account of others, and otherwise

merchandising and dealing in hay and straw in car-load lots in Kansas City, Jackson County, Missouri.'' Respondents have been engaged in said business for a great number of years. The greater part of their business is interstate commerce and most of the consignments and purchases of such commodities come from states other than Missouri. In many cases, when such commodities are received by respondents, they are consigned to places outside of the State of Missouri on the original railroad billing from points of origin outside of Missouri and are not unloaded at Kansas City. Practically all of the hay and straw coming to the Kansas City market is consigned to respondents.

Respondents allege that their respective businesses have been organized and built up after long years of honest effort, labor and expense, and constitute valuable assets and property rights; that said pretended law denies the rights of respondents to engage or to continue in their businesses except upon giving bond and taking out a license; that appellants claim the right and assert the intention to exercise inquisitorial powers, both upon the interstate and intrastate business of respondents, to investigate and examine books and other records pertaining to the conduct of respondents' business and to require respondents to make affidavits in respect thereto.

''That said act enforces the burdensome and expensive duty upon the plaintiff of establishing a new system of bookkeeping and requires plaintiffs to disclose information which will come into the possession of plaintiffs' competitors and others and be used to plaintiffs' detriment and to the destruction of plaintiff's businesses; that the act permits the state officers to examine into the books and papers of the plaintiffs and to derive therefrom the names of the plaintiffs' customers and of other persons with whom plaintiffs have business and that such information may be improperly used to the detriment of the business of the plaintiffs.''

It is further alleged:

''That the defendant C. P. Anderson has announced his settled purpose to publish and disseminate lists of commission merchants from which the names of the plaintiffs and of others refusing to comply with the law aforesaid, or any part thereof, will be omitted on the ground of their failure to comply with said law, or will be noted therein as not complying with the law; that the necessary effect thereof will be to discriminate against these plaintiffs and others standing in a similar situation in the minds of producers and the public generally, and to be to injure their business and the public estimate of their reliability, thus conferring upon the defendants the arbitrary power and effect to black-list these plaintiffs without any hearing or justification whatsoever.''

Certain facts are then alleged for the purpose of showing that respondents have no adequate remedy at law by appeal from criminal prosecutions or otherwise, and that irreparable injury will be inflicted upon them unless the enforcement of said act is enjoined. The prayer is for an injunction restraining appellants from enforcing said act.

The invalidity of said act is specifically assailed upon the following grounds:

"That said act is contrary to and violative of Section 8 of Article 1 of the Constitution of the United States conferring power upon Congress to regulate interstate commerce, and is contrary to and violative of Section 1 of Article XIV of the Amendments to the Constitution of the United States providing that no State shall deprive any person of liberty or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law.

"The provisions of said act are outside of the title thereof and are not clearly expressed therein and the bill and said act contain more than one subject, all in contravention of Section 28 of Article IV of the Constitution of Missouri.

"That the act gives to the State Marketing Commissioner arbitrary powers of inquisition and inspection of the plaintiffs' ledgers, books, accounts, memoranda and other papers, and in this respect violates Section 11, Article II, of the Constitution of the State of Missouri, and Article IV of the Amendments to the Constitution of the United States with reference to unlawful and unwarranted search and seizures.

"That said act gives arbitrary powers to the State Marketing Commission to require these plaintiffs to make affidavits with respect to transactions had with plaintiffs' customers and in this respect violates Section 23 of Article II of the Constitution of the State of Missouri."

By the judgment entered by the trial court it was adjudged "that the said law mentioned in plaintiffs' petition is unconstitutional for the reasons specified in plaintiffs' petition, and adjudges and decrees that the defendants and each of them be and they are hereby permanently enjoined and restrained from in any way enforcing the act entitled, 'An act to regulate commission merchants,' etc., as more particularly appears in the Session Laws of the Missouri Legislature for the year 1925 at page 121, and that the defendants be and they are perpetually restrained from in any way attempting to compel the plaintiffs to apply for a license under said act, or from compelling or attempting to compel the plaintiffs to give a bond as required in said act, or in any way inspecting or demanding the right to inspect the books, ledgers, accounts, etc., of the plaintiffs, or requiring the plaintiffs to make any affidavits mentioned in said law, or in any way arresting or interfering with the plaintiffs in the lawful prosecution of their business, and

that the defendants are permanently restrained from arresting or filing criminal charges against the plaintiffs, or any of them, for failure on the part of the plaintiffs to comply with said law, and defendants are perpetually restrained from in any way exercising or attempting to exercise the supervisory or regulatory powers attempted by said law to be conferred upon them."

A general understanding of the provisions of the act is essential to a proper consideration of the assaults made upon its validity. Section 1 provides that every person, etc., who shall receive, sell or offer for sale on commission in this State "any kind of farm products, shall be deemed to be a commission merchant and engaged in the commission business." Certain exceptions are then made, among which is that the act shall not apply to commission merchants "dealing exclusively either in live stock or in grain." Both commodities are "farm products," which term is defined as including "agricultural, horticultural, vegetable and fruit products of the soil, meats, marine food products, poultry, eggs, dairy products, wool, hides, feathers, nuts, and honey, but shall not apply to seeds sold at retail, nor include timber products, tea, coffee, or pelts of fur-bearing animals." Hay and straw clearly come within the definition of farm products.

Sections 2 and 3 deal with the requirements of taking out a license as commission merchants, for which the annual fee is $25, and of giving surety bond as such in the sum of $2,000. Section 4 specifies that commission merchants shall keep certain specified records. Section 5 provides for the refusal and revocation of licenses upon certain conditions. Section 6 provides for circuit court review of the acts of the State Marketing Commissioner and hearing *de novo* in said court with appeal therefrom, as in other civil cases, and provides that the license revoked by the commissioner shall be deemed in full force pending final determination, unless ended prior thereto in accordance with its terms.

Section 7 defines the powers and duties of the commissioner. These include an investigation of the character and standing of the applicant before a license is granted to him, investigation of complaints against commission merchants, requirement of production and inspection of books and other records of commission merchants, sworn statements of commission merchants, etc. The commissioner is given power to revoke licenses after citation and hearing.

By Section 9 certain acts of commission merchants are made misdemeanors, punishable by fines not less than $50 nor more than $500. The acts so denounced are:

"(a) knowingly impose any false or fictitious charge for handling or services in connection with farm products, or (b) with intent to defraud, fail to account or make settlement therefor promptly and properly, or (c) with intent to deceive, make any material false state-

ment or statements as to market conditions, or (d) enter into any combination to fix the prices of farm products, or (e) with intent to defraud, make any material false statement or report as to the grade, condition, marketing, quality or quantity of goods received, or (f) without a license, advertise or hold himself, themselves or itself out as a commission merchant in farm products, or (g) directly or indirectly purchase for his, their or its own account, goods received for sale on commission without prior written authority from the consignor, or fail promptly to notify the consignor of any such purchase on his, their or its own account, or fail forthwith to enter any such transaction or purchase on the record or account of sales: (Provided, that clause (g) shall not be construed as prohibiting any commission merchant from taking to account of sales, in order to close his day's business, miscellaneous lots or parcels of farm products remaining unsold, if such commission merchant shall forthwith enter such transaction in his account of sales); or (h) wilfully fail or refuse to comply with any provision of this act."

I. Respondents assert, and appellants do not deny, that the enforcement of the act, if invalid as alleged, may be enjoined. We so held in the case of State ex rel. Chase v. Hall, 297 Mo. 594, which was an

**Remedy.** original proceeding in this court to prohibit Judge HALL from determining in an injunction suit the constitutionality of the 1921 Marketing Bureau Act. That case is ample and controlling authority for the appropriateness of the remedy invoked by respondents.

II. The contention of respondents that the act was passed in violation of constitutional restrictions upon the General Assembly should be considered first, for, if respondents are correct in such contention, our conclusion to that effect would necessarily result in affirmance of the judgment below without the necessity of considering other assaults upon the validity of the act.

(a) Respondents contend that the act embraces more than one subject and contains matters which are not clearly expressed in its title and which are entirely outside of such title, in violation of Sec-

**Title.** tion 28. Article IV, of the Missouri Constitution. It is first urged that the bill purports to regulate commission merchants in farm products, that grain and live stock are farm products, and the exception from the provisions of the bill of certain commission merchants dealing in grain and live stock is not clearly expressed in the title. The title to said act is as follows:

"An act to regulate commission merchants in farm products, as said terms are herein defined; prohibiting the carrying on or engaging in the business of such commission merchant without procure-

315 Mo.—53.

ment of license, as herein provided; fixing the fee to be charged for such license; requiring the giving, and keeping good, of a surety bond, with prescribed conditions, by every such commission merchant; regulating the duties of such commission merchant with respect to reports, account sales, records, accounting and remittances; regulating the granting and revocation of licenses, and providing for review thereof; conferring various powers and authorities upon the marketing commissioner, his agents and delegates with reference to such commission merchants; declaring certain acts to be offenses, and the penalties therefor; specifying the rules of interpretation to be applied to this act; with an emergency clause."

, Said title recites that the act is one to regulate commission merchants in farm products *as said terms* are therein defined. It is not permis-

**One Subject.** sible to apply the word "terms" to the words "farm products" alone, as contended for by respondent. The word "terms" is plural and either refers both to the words "commission merchants" and the words "farm products" taken separately, or refers to the words "commission merchants in farm products," as a whole. In either view the title indicates that the body of the act will undertake to define what commission merchants come within the meaning of the act. It was not necessary that the title should go into details and indicate how the term "commission merchants" was to be defined in the body of the act.

Respondents cite only one case in support of their contention that the act contains matters not clearly expressed in the title. It is the case of Williams v. Railroad, 233 Mo. l. c. 676. The title considered there was "An act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees." It was held that "there is no clear expression in this title to the bill under consideration indicating that in the body of the act might be expected language concerning railroads, railroad property or railroad employees." The act was accordingly held to have been passed in violation of the constitutional provision now invoked by respondents.

Measured by the language of Judge Graves in the Williams case, the title of the act now before us is sufficient. The words "An Act to regulate commission merchants in farm products, as said terms are herein defined," clearly indicated that language would appear in the act defining the term "commission merchants in farm products." As we construe the title, it clearly expresses the subject of the act, in so far as terms are therein defined. The title is in that respect a sufficient guide board indicating the general contents of the act. [St. Louis v. Weitzel, 130 Mo. l. c. 616.]

(b) It is said that the title gives no indication that the body of the act required certain contracts with reference to remittances to be in

writing.  The title clearly indicated that the body of the act would

**Remittances.** contain language "regulating the duties of such commission merchant with respect to . . . accounting and remittances."  It was not necessary that the title should specify just how the body of the act would deal with the subject of the duty of commission merchants with respect to remittances to their consignors. It was sufficient that such title indicated in a general way that the subject would be dealt with in the act.

(c)  Respondents contend that nothing is said in the title indicating that the body of the act would place upon the commission merchant the burden of proof to establish the accuracy and correctness of his accounts of sales.  We do not regard this con-

**Burden of Proof.** tention as sound.  The title indicated that the entire duty of commission merchants, with respect to accounting by them with their consignors, would be dealt with in the bill.  The effect of a statement rendered in making such accounting must be regarded as fairly within the title.

(d)  The final assault upon the passage of the bill, as measured by Section 28, Article IV, of the Constitution, is that Section 8, subdivision (g), makes it a misdemeanor for a commission merchant directly or indirectly to purchase goods received by him for sale on commission without prior written authority from the consignor. It can scarcely be said that such provision is unreasonable.  The oppor-

**Purchase from Consignor.** tunity and incentive for a commission merchant to deal unfairly or fraudulently with the consignor are not present to the same extent when he is dealing with third persons, as they are when the commission merchant becomes the purchaser of his consignor's commodities, particularly when such consignor is not present, as is usually the case.  The provision is clearly germane to the regulation of commission merchants. The title clearly indicated that the body of the act would declare certain acts of commission merchants to be offenses and would fix penalties therefor.  The contention is without merit.

In view of the foregoing considerations, we hold that the commission merchants' act was passed in conformity with the provisions of Section 28, Article IV, of the Constitution.

III.  One of the main contentions of respondents is that the act is an unreasonable abuse of the police powers of the State.  We think the great weight of authority supports the proposition that the en-

**Police Regulation.** actment of laws, in a general way similar to our commission merchants' act and making no discriminations which are unjust or unreasonable, comes within and is justified by the police power of the State.

The case of State ex rel. Beek v. Wagener, 77 Minn. 483, puts so clearly the reasons bringing legislation of this character within the police power of the State, that we feel justified in quoting in full that portion of the opinion. In that connection COLLINS:, J., said:

"Obviously, the act was not intended as a measure for the accumulation of a public revenue, and, if sustained at all, it must be upon the ground that it is a lawful regulation for the public good—a legitimate exercise of the police power of the State.

"The design seems to have been to protect a large class of people, engaged in agricultural pursuits, and more or less remote from market, from imposition and actual fraud when intrusting their products and produce into the hands of commission men for sale. And it is no argument against the statute to say that commission men are engaged in a legitimate business, and for that reason are not subject to police regulation, if the public good demands it. The operation of railways, the conducting of banks, the loaning of money at interest, the insurance business, the operation of custom grist-mills, or grain elevators and warehouses, peddling from house to house, and the keeping of bakeries, butcher shops, hotels, restaurants, and saloons, are each legitimate and lawful occupations in this jurisdiction; but all may be subject to police regulation, and most of them are. But, of course, the right of the State to exercise police power over its citizens and their occupations is not unlimited.

"The term 'police power,' as understood in American constitutional law, means simply the power to impose such restrictions upon private rights as are practically necessary for the general welfare of all. [Rippe v. Becker, 56 Minn. 100, 57 N. W. 331.] And it must be confined to such restrictions and burdens as are thus necessary to promote the public welfare, or, in other words, to prevent the infliction of public injury. [State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381, 71 N. W. 400.] And in the exercise of its police powers a State is not confined to matters relating strictly to the public health, morals, and peace, but, as has been said, there may be interference whenever the public interests demand it; and in this particular a large discretion is necessarily vested in the Legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. [Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499.] If, then, any business becomes of such a character as to be sufficiently affected with public interest, there may be a legislative interference and regulation of it in order to secure the general comfort, health, and prosperity of the State, provided the measures· adopted do not conflict with constitutional provisions, and have some relation to. and some tendency to accomplish, the desired end. The subjects which may be legislated upon are, of necessity, continually arising as business increases, and new phases,

conditions, and methods appear. The development of the law relating to the proper exercise of the police power of the State clearly demonstrates that it is very broad and comprehensive, and is exercised to promote the general welfare of the State, as well as its health and comfort. And the limit of this power cannot and never will be accurately defined, and the courts have never been willing, if able, to circumscribe it with any definiteness.

"The inquiry, then, is as to how and to what extent the business in question had become affected with public interests. What evils or supposed evils did the members of the Legislature have in mind, and were attempting to remedy when enacting this law?

"The fact is that the public generally looked with distrust upon the methods of merchants engaged in selling agricultural products and farm produce upon commission, perhaps without good reason. It had become a matter of common talk among the people that those who handled wheat imposed upon their consignors by reporting sales and accounting for the proceeds at the lowest prices at which that article had been sold within the period of time during which the sale could have been made, and without regard to the prices actually obtained. With prices fluctuating at all times, as is the fact in the wheat market, and rarely remaining stationary for more than a few minutes at a time, the opportunity for fraud seems to be without limit when selling this commodity on commission. In addition to this is the fact that the consignor usually resides at a considerable distance from the commission merchant, and is practically unable to discover whether he has been cheated or not. And, with respect to other agricultural products and farm produce, it is to be observed that they are largely of a perishable nature, and subject to rapid deterioration in transit or after reaching the consignee. This fact gives to the latter an opportunity to falsify his report of a sale to the distant consignor, and to insist that the article consigned had become more or less unmarketable before sale could be made; and here, as in the case of grain, the latter has little or no opportunity to ascertain the truth.

"Without wishing to intimate that fraud of this nature had actually become so prevalent as to justify the accusation made, we do say that a majority of the people in this State had become convinced of the truth of these charges, and in great numbers beseiged the Legislature in behalf of the suppression of the alleged evil practices. This was a matter of common knowledge. It was publicly believed that the business of selling agricultural products and farm produce on commission had become saturated with false and fraudulent methods, to the great injury of a large class of our citizens, who were compelled to deal with commission men, and who were powerless to detect or prevent the wrong, and that the business had thus become sufficiently affected with public interests to be the proper subject of police regu-

lation. We are of opinion that the Legislature did not exceed its powers when, under the circumstances, it enacted a measure having relation to, and a tendency to accomplish, the desired end, such as is the law now before us.

"This enactment was designed to prevent false and fraudulent practices of the character complained of, to correct the evils generally believed to prevail, and to compel the merchant to whom property was consigned for sale on commission to deal honestly and to be faithful to his trust. Such a law is not unusual. It only requires a consignee to render an account of his management of a consignor's property. 'He holds himself out as a factor for the management and sale of other people's property, and in that respect is like a public warehouseman.' Hawthorn v. People, 109 Ill. 308, was a case in which a statute (much like the one at bar) requiring operators of butter and cheese factories on the co-operative plan to give bonds, and to make written reports of their business at the end of each month, was held to be constitutional, as a valid exercise of the police power."

In State ex rel. Brewster v. Mohler, 98 Kan. 465, in sustaining the power of the State of Kansas to pass and enforce a commission merchants' law very much like our own, it was said: "The business of commission merchants dealing in farm produce has grown to be one of great volume and much importance. In its development its tendency seems to be to centralize in the larger cities, far removed from the points of origin, and where by no practical possibility can the originators of the traffic, the consignors, keep personal check on the doings of the commission merchants, who are merely the agents of the consignors. Such a situation would seem to warrant a reasonable extension of the State's governmental power over the business." The Kansas Supreme Court was sustained by the United State Supreme Court in Payne v. State, 248 U. S. 112.

In addition to these cases, the power of the State to require commission merchants to give bond, to take out a license and to keep accurate books and records and to submit to supervision by officers of the State has been sustained as a legitimate exercise of the police power of the State in Illinois and Washington. Such power was denied in the State of Michigan. [Lasher v. People, 183 Ill. 226; Ferguson-Hendrix Co. v. Fidelity & Deposit Co., 79 Wash. 528; People v. Berrien, Circuit Judge, 124 Mich. 664.] As pointed out in State ex rel. Mohler, supra, the opinion of the Michigan Supreme Court stands alone upon the question.

We think the better reasoned and more correct conclusions are reached by the courts which sustain the power of the State to enact and enforce laws subjecting commission merchants to supervision and regulation, and accordingly hold that the Missouri act is a legitimate exercise of the police power of our State.

IV.　But even if such legislation be deemed within the police power of the State, respondents still contend that our particular act is discriminatory and deprives respondents of the equal protection of the law because the act exempts from its operation dealers in live stock and grain.　Respondents cite the case of Hawkins v. Smith, 242 Mo. 1. c. 695, as laying down the correct rule.　We quote from that case as follows:

**Discrimination: Exemption.**

"Undoubtedly the Legislature possesses the power to 'select and classify objects of legislation,' and just as undoubtedly may exercise a wide discretion in the exertion of that power.

" 'There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities.　And necessarily so.　In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.'　It is 'sufficient to satisfy the demand of the Constitution if a classification is practical and not palpably arbitrary.'　[Louisville & Nashville Railroad v. Melton, 218 U. S. 1. c. 55.]　'The selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so.'　[Bachtel v. Wilson, 204 U. S. 1. c. 41.] Again, 'A classification may not be merely arbitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal and oppressive legislation.'　[Heath & Milligan. Co. v. Worst, 207 U. S. 1. c. 354; Callahan v. Railroad, 170 Mo. 1. c. 494; Holden v. Hardy, 169 U. S. 1. c. 393, et seq; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; St. Louis Cons. Coal Co. v. Illinois, 185 U. S. 203.]

"The Legislature in the exercise of its power to classify is not required to trace with a hair line the boundaries of the class to which the resulting enactment shall apply.

"Neither State nor Federal Constitution proceeds upon the assumption that the Legislature is omniscient, nor is the discretion of that magistracy to be superseded by that of the courts in any case.　It is only when the limits of legislative *power* have been transcended that the courts may extend a restraining hand. . . .　So far as differences of opinion as to the propriety, policy and even justice of classifications for the purposes of legislation are concerned, the Legislature is the final arbiter of all so long as it acts within the range of its wide discretion."

The rule there laid down by this court appears to be in accord with the general rule.　It therefore remains to determine whether the exception from the operation of the act of commission merchants "dealing exclusively in live stock or in grain" amounts to an arbitrary and unreasonable classification.　It is not for the courts to say wheth-

er such classification is wise or necessary. It is sufficient if any difference in situation or condition exists which affords a reasonable ground for the classification.

The Kansas Supreme Court in State ex rel. v. Mohler, supra, stated reasons amply justifying the omission from the operation of the Kansas law of commission merchants dealing exclusively in live stock. We again quote from that case:

"If, as argued, it also exempts live stock, that too, is a reasonable exemption, since live stock is almost invariably shipped in carloads and is so valuable as to justify the producer or shipper in the expense of accompanying his shipment to market and personally supervising the fidelity of the commission merchant who makes the sale for him or in making the sale himself."

It is not only the value of carload shipments of live stock which justifies the shipper in accompanying his shipment to market. The danger of injury to stock enroute and the need of properly feeding and watering them on long hauls make it necessary that the shipper personally attend such shipments. The practice of furnishing the shipper free transportation when accompanying such a shipment was doubtless born of such necessity.

But respondents can find no sufficient reason for the exclusion of commission merchants dealing in grain, when commission merchants dealing in hay and straw are not also excepted. It may be that the inspection for grain provided by this State (Art. II, chap. 49, R. S. 1919) was deemed by the Legislature to be sufficient protection to the shippers of grain. They are not at the mercy of the commission merchant as to weight, quantity or quality of shipments. They are already more adequately protected than are consignors of other agricultural products.

The Illinois Supreme Court held that the fact that state inspection was already provided for grain, live stock and dressed meats, furnished a sufficient basis of classification whereby commission merchants dealing in those commodities were properly excepted from the provisions of the commission merchants' act of that State. [Lasher v. The People, 183 Ill. l. c. 231 and 232.]

We cannot say that the exception of commission merchants dealing exclusively in grain and in live stock amounts to an unreasonable or arbitrary classification, and hold that our act does not improperly discriminate against respondents and does not deprive them of the equal protection of the law.

V. The act is assailed because it is said to place a burden upon interstate commerce, in violation of Section 8, Article 1, of the United

States Constitution, which confers upon Congress the power to regulate interstate commerce. Upon its face our act pur-

**Burden upon Interstate Commerce.** ports to deal only with persons, etc., doing a commission business "within this State." For fear the legislative purpose should be misunderstood, Section 9 was added at the close of the act and reads as follows:

"It is the express intention of the General Assembly, in enacting this law, to exercise to its full extent the regulatory and police powers of the State, and where provisions occur herein, which in their broadest significance are in conflict with the Federal power to regulate commerce, it is the intention of the General Assembly to confine such provisions within the competence of the State over the particular subject-matter. The invalidity of one or more provisions shall not affect the remainder of this act."

We have held that the act is within the police power of the State, and does not unduly discriminate between commission merchants, nor deny the equal protection of the law. The act is not invalid as offending against Section 8, Article 1, of the Federal Constitution, unless it improperly burdens interstate commerce. The act neither purports nor undertakes to deal directly with the commodities handled by commission merchants. No inspection of such commodities is provided. Commission merchants are left entirely free to deal with any commodities regardless of grade or condition or to contract in respect thereto in any manner they will. The act concerns itself merely with the conditions under which commission merchants shall engage in the commission business, requires that books and records shall be kept and accountings made in a certain way, in aid of which a bond is exacted, and empowers the State Marketing Commissioner to see that such provisions of the act are complied with, and, upon failure of such compliance, to revoke the license of the offending commission merchant. Such regulations affect interstate commerce only indirectly and incidentally and in no sense amount to regulation of interstate commerce or an undue intrusion upon the appropriate field of Federal jurisdiction.

The very similar statutes of Minnesota and Kansas were held by the Supreme Courts of those States to be valid as against this attack. In State ex rel. v. Mohler, supra, the Kansas Supreme Court said: "A commission merchant's business is that of a warehouseman and sales agent. As a warehouseman, his business is subject to state control notwithstanding the goods which he handles may be commodities of interstate commerce. [Munn v. Illinois, 94 U. S. 113.] As a sales agent, the commission merchant is subject to state control, although the commodities sold by him may be of an interstate character. [Hopkins v. United States, 171 U. S. 578; W. W. Cargill Co. v. Minnesota, 180 U. S. 452.]"

The Minnesota Supreme Court, in State ex rel. v. Wagener, supra, said:

"It is objected that the statute is an unlawful and forbidden interference with interstate commerce.

"It is well settled that a law cannot be deemed a regulation of commerce among the States merely because it may incidentally or indirectly affect it. [Missouri, K. & T. Ry. Co. v. Haber, 169 U. S. 613, 18 Sup. Ct. 488.] At most, this statute regulates the business of certain classes of commission men within this State, and is nothing but an ordinary police regulation, enacted in good faith, and intended to promote the general welfare and prosperity of the people within our borders. As was said in Hennington v. Georgia, 163 U. S. 299, at page 318: 'Such a law, although in a limited degree affecting interstate commerce, is not for that reason a needless intrusion upon the domain of Federal jurisdiction, nor strictly a regulation of interstate commerce, but, considered in its own nature, is an ordinary police regulation designed to secure the well-being and to promote the general welfare of the people within the State by which it was established; and, therefore, not invalid by force alone of the Constitution of the United States.' See also Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154; Gladson v. Minnesota, 166 U. S. 427, 17 Sup. Ct. 627.

"And it may further be observed that the statute does not in terms apply to interstate business, and it will not be implied that the Legislature intended to go beyond its lawful powers in enacting it. If, therefore, it be held that the Legislature could not forbid one to engage in the business of a commission merchant, as to interstate shipments, without compliance with the provisions of the state statute, such statute should be construed to apply only to a local or domestic business; and such construction will be followed by the Federal courts. [Osborne v. Florida, 164 U. S. 650, 17 Sup. Ct. 214.]"

Respondents rely mainly upon the cases of Lemke v. Farmers' Grain Co., 258 U. S. 50, and Shafer v. Farmers' Grain Co., 268 U. S. 189. wherein an act of the North Dakota Legislature and a later initiative law of that State were held invalid as improperly burdening interstate commerce. Both acts dealt with the grain itself and imposed regulations for grading, weighing and disposition of dockage, and even undertook to regulate the profits of those buying, storing and selling grain. Mr. Justice Brandeis, with the concurrence of two of the other justices, vigorously dissented from the opinion of Mr. Justice Day in the Lemke case.

In the Shafer case, Mr. Justice Van Devanter said: "The decisions of this court respecting the validity of state laws challenged under the commerce clause have established many rules covering various situations. Two of these rules are specially invoked here—one that a state statute enacted for admissible state purposes and which af-

fects interstate commerce only incidentally and remotely is not a prohibited state regulation in the sense of that clause; and the other, that a state statute which by its necessary operation directly interferes with or burdens such commerce is a prohibited regulation and invalid, regardless of the purpose with which it was enacted.'' After review- ing the various provisions of the North Dakota Act and showing how such provisions burdensomely affected interstate commerce, the learned justice said: ''We think it plain that, in subjecting the buying for interstate shipment to the conditions and measure of control just shown, the act directly interferes with and burdens interstate com- merce, and is an attempt by the State to prescribe rules under which an important part of such commerce shall be conducted. This no State can do consistently with the commerce clause.''

We find nothing in the Lemke or Shafer cases justifying the belief that our Commission Merchants Act unduly burdens interstate com- merce.

It is not apparent how the Missouri Commission Merchants Act, in so far as applicable to commission merchants dealing in hay and straw, in any wise conflicts with or impinges upon Federal investigation, in- spection and certification of the class, quality and condition of hay offered for interstate shipment, authorized by 43 U. S. Statutes at Large, pages 844 and 845. Such Federal legislation should not be construed as denying to the States the right to enact and enforce mere police regulations of commission merchants which in no wise intrude upon the field occupied by the Federal Government under the provisions of said act.

VI. It is said that the power conferred upon the commissioner to inspect and take copies of books, records, etc., of commission merchants, if and when exercised, constitutes unreasonable and un- lawful search and seizure, and that the requirement of affidavits in reference to transactions, under penalty of forfeiture **Search and** of license, compels commission merchants to incriminate **Seizure.** themselves. Sections 11 and 23, Article II, of the Mis- souri Constitution, and Article IV of the Amendments to the United States Constitution, are invoked in aid of this contention.

Appellants and respondents have briefed the questions here in- volved at some length. The power of the commissioner to examine the books and records of commission merchants and to take copies thereof and to require affidavits from such commission merchants is not vitally essential to the scheme of police regulation expressed in the act. Assuming, without considering the question or so deciding, that the provisions of the act thus assailed, if enforced, would violate respondents' rights under the constitutions of both State and Federal Governments, yet said provisions may be eliminated, and there still

would remain a rather full and complete statutory scheme of regulation of commission merchants, which is enforceable and would be of great value and usefulness to the producers and shippers of the commodities handled by the commission merchants of Missouri. The General Assembly specifically provided that the "the invalidty of one or more provisions shall not affect the remainder of the act;" thus expressing our own conclusion that the act would have passed the General Assembly even if the features of it, now assailed as violative of the State and Federal Constitutions, had been entirely omitted. Consideration of such features of the act is not essential to the determination of the right of appellants to enforce other features of the act which we regard as valid. Such questions must therefore await consideration and determination by the courts if and as they arise in the course of the administration of the act.

VII. For the same reason, we need not now consider the contention that the act deprives commission merchants of equal protection of the laws of the State in that the hearings provided for before the commissioner do not give them an equal opportunity to secure and present evidence such as is given to those making complaint against them. The power here broadly challenged is the power of the State to require commission merchants to take out a license and to require them to give bond as such and to submit to valid provisions of the act. We are not concerned with the validity of mere details of the act, the invalidity of which, if invalid, would not result in the overturning of the entire act. Hence, even if the contention of respondents in this respect be sound, a holding to that effect would still leave a valid and useful law in other respects. Even if it be conceded that the act does not provide sufficient and valid machinery for holding hearings and revoking licenses of commission merchants, such fact cannot affect the enforcement of valid provisions of the act. It will be time enough to decide the sufficiency of the provisions of the act in such respect when the commissioner undertakes to revoke the license of a commission merchant and his right to do so and the means he seeks to employ to that end are assailed in an appropriate proceedings.

VIII. Respondents' Points V and VIII may be considered together They are that "the State Board of Agriculture is a corporation created by the Legislature for certain definite purposes and the Legislature was without power to delegate to it or any employee of **Delegation** the board the matters attempted to be delegated by the **of Power.** act under discussion." And that "the State Marketing Commissioner is an employee of the State Board of Agriculture, a corporation, and the Legislature has no authority to confer the powers of the act upon him and to authorize the State Marketing Commis-

sion to delegate the powers to others." No constitutional limitation is pointed out as invalidating the delegation of such authority or restricting the Legislature in any respect, nor is the decision of any court cited or discussed. Surely it is not the contention of respondents that the Legislature, having created the State Board of Agriculture and having given it certain powers and duties, cannot impose other duties upon such board or attach to it any bureau or department it sees fit, if not violative of the Constitution, and entrust to such bureau and its employees any governmental functions and duties it deems wise and necessary. Yet, such seems to be the contention, as we understand respondents' brief. The argument is that the Legislature has no power to do this. The argument would be well enough if, without an act of the Legislature conferring the power upon it, the Board of Agriculture undertook to set up a bureau as one of its departments and to confide to such bureau the duty of licensing and regulating commission merchants.

It would seem to be unnecessary at this late day to contend for the power of the State Legislature to pass any law it chooses, so long as its action in that respect violates no restrictive provision of the State or Federal Constitutions. The Legislature needs no express constitutional authority to pass any law it sees fit. It need only inquire whether it is forbidden to pass it. Our Legislature created the State Board of Agriculture and conferred certain powers and duties upon it. It was perfectly competent for the Legislature to add to or to take away from the duties of such board, so long as it violated no constitutional restriction in so doing. None has been pointed out which denies to the Legislature the right to create the State Marketing Bureau, to place it under the State Board of Agriculture and to confide to the commissioner of such bureau the power and duty to administer the provisions of the Commission Merchants' Act. The contention is without merit.

IX. We have carefully considered all of the contentions of respondents that the act is invalid. We are unable to concur in the view of the trial court that the act "is unconstitutional for the reasons specified in plaintiffs' petition." We cannot agree that any one of the reasons specified in the petition is sufficient to invalidate **Valid** the act and thus defeat the will of the General Assembly as **Act.** expressed therein. It, therefore, becomes our duty to reverse the judgment of the trial court and to remand the case to that court with directions to sustain the demurrer of appellants (defendants below) and to enter its judgment accordingly.

It is so ordered. All concur, except *Graves, J.,* absent.