THE STATE v. CHESTER VIENUP and NATIONAL SURETY CORPORATION, a Corporation, Appellants.—147 S. W. (2d) 627.

Division One, February 14, 1941.

*George C. Dyer, D. A. Murphy* and *Harding, Murphy & Tucker* for appellants.

384

*Roy McKittrick*, Attorney General, for respondent; *J. F. Allebach* of counsel.

HAYS, J.—The State of Missouri brought this action against Chester Vienup, a dealer licensed to sell intoxicating liquors in the original package, and the National Surety Corporation, surety on Vienup's bond, alleging breach thereof in the particular hereinafter mentioned. Judgment was for the plaintiff and the defendants have appealed. The case was submitted to the circuit court sitting without a jury. The material portions of the case and of the record made below may be summarized as follows: On December 31, 1936, Vienup applied to the Supervisor of Liquor Control for a license to sell intoxicating liquor in the original package at an establishment known as the White Way Camp in Warren County. A license was issued to him. As a condition precedent to its issuance the two defendants executed and filed with the Department of Liquor Control a bond in the penal sum of $2000, which was in the form duly approved by the Supervisor and is the instrument here sued upon. This bond was given in compliance with the provisions of Section 19 of the Liquor Control Act of 1933 and acts amendatory thereto (Laws of Mo., Extra-Session 1933-34, p. 77, Mo. Stat. Ann., sec. 4525g-21, p. 4689), and was conditioned as follows:

"The condition of this obligation is such, that, if the said principal does not violate any of the provisions of Committee Substitute for Senate Bills Nos. 6, 21, 22, 23, 24 and 25, passed by the 57th General

Assembly in Extra Session, and any acts amendatory thereto, or any rule or regulation of the Supervisor of Liquor Control; and if said principal shall at all times keep an orderly house and does not sell, give away, or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quantity to any minor; and if said principal shall pay all taxes, inspection and license fees provided for by law, together with all fines, penalties and forfeitures which may be adjudged against the principal and under the Liquor Control Act and amendatory acts thereto; and if said principal shall faithfully perform all duties imposed upon him by law, then this obligation shall be null and void; otherwise to remain in full force and effect; provided, the enumeration of the foregoing specific provisions shall not be construed as limiting or affecting in any way the foregoing general provisions; provided, further, that a breach of any of the conditions of said bond, whether general or special, shall work a forfeiture of said bond.''

While this license and bond were in full force and effect Vienup, in violation of the provisions of the Liquor Control Act of 1933, sold one-half pint of whiskey on Sunday to an inspector of the department. For this violation he was cited to appear before the Supervisor, given a hearing, and his license suspended for thirty days.

In the trial court the State, alleging this sale as a breach of the bond, sought and was given judgment for the entire penal sum of $2000. There was no evidence whatsoever of any actual damage suffered by plaintiff as a result of such breach, but the trial court held that the bond sued upon was a forfeiture bond as distinguished from one of indemnity only; that evidence of damage resulting from the breach was unnecessary, and that on the mere proof of breach the State was entitled to collect the entire penal sum. This ruling is now assigned as error.

█ The question for our determination therefore is this: Is the bond sued upon one of forfeiture or one of indemnity? The answer to this question must turn on the construction to be given the statute under which the giving of the bond is required and which prescribes its terms; for, under the well settled rule in this State, any required provisions of the condition of the bond found in the statute but omitted from the instrument itself must be read into it, and, conversely, terms which are found in the condition of the bond but not in the statute are to be disregarded. [State v. Wipke, 345 Mo. 283, 133 S. W. (2d) 354, and cases there cited.] As stated above, Vienup was licensed to sell liquor at retail in the original package only. In the Wipke case, supra, we pointed out that there are two sections of the Liquor Control Act dealing with bonds required to be given thereunder. Section 13a, which was the one directly involved in the Wipke case, was held to apply only to persons licensed to sell liquor by the drink, while Section 19 applies to other types of licensees, including persons

licensed to sell at retail in the original package. Section 10 reads as follows:

"Application for license to manufacture or sell intoxicating liquor, under the provisions of this act, shall be made to the Supervisor of Liquor Control. Before any application for license shall be approved the Supervisor of Liquor Control shall require of the applicant a bond, to be given to the State, in the sum of Two Thousand Dollars, with sufficient surety, such bond to be approved by the Supervisor of Liquor Control, conditioned that the person obtaining such license shall keep at all times an orderly house, and that he will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quantity to any minor, and conditioned that he will not violate any of the provisions of this act and that he will pay all taxes, inspection and license fees provided for herein, together with all fines, penalties and forfeitures which may be adjudged against him under the provisions of this act."

In contending that the bond here given is one of forfeiture and not one of indemnity, the State relies upon the general proposition that whenever a bond is given to the sovereign as a condition precedent to the issuance of a license or other special privilege and is conditioned on compliance with the law by the licensee, it falls within the forfeiture class, and the sovereign, upon proof of any breach, may recover the full penal sum without showing actual damages. In support of this contention we are referred to a large number of authorities from other jurisdictions. Perhaps the leading case among the earlier decisions is United States v. Montell, Federal Case No. 15,798. Of similar import is the decision of the Supreme Court of the United States in Clark v. Barnard, 108 U. S. 436, 3 Sup. Ct. 878, 27 L. Ed. 780. [See also Quintard v. Corcoran, 50 Conn. 34; Commonwealth v. Moeschlin (Pa.), 170 Atl. 119; City of Paducah v. Jones (Ky. App.), 104 S. W. 971; City of Albany v. Cassel (Ga. App.), 76 S. E. 105, and other cases collected in the annotation in 103 A. L. R. 405.]

An examination of these cases, however, shows that the bonds there under consideration and the statutes under which the same were given differ in several important particulars from that now before us. They are essentially similar to the bond involved in the Wipke case, supra, and given under the provisions of Section 13a of the Liquor Control Act.

Respondent also cites the Wipke case, supra, in support of its present position. In the Wipke case, after holding that the bond there before us was governed solely by Section 13a and that the provisions contained in the instrument, which were not in accord with the provisions of that section, should be disregarded, we pointed out that the bond must be construed as if containing one and only one condition; that is, that the principal obligor should faithfully obey the law. We accordingly held the bond to be one of forfeiture, applying the

rule laid down in the Montell and Barnard cases, supra, and other similar decisions.

Section 19, however, differs materially from Section 13a. It sets out in detail the condition of bonds to be given in compliance with its mandate. In particular it requires among other things that the bond so given shall be conditioned that the principal obligor will pay "all taxes, inspection and license fees provided for herein, together with all fines, penalties and forfeitures which may be adjudged against him under the provisions of this act."

That the rule stated in United States v. Montell, supra, Clark v. Barnard, supra, and in the Wipke case, supra, is not without exception is shown by the decision of the Supreme Court of the United States in United States v. Zerbey, 271 U. S. 332, 46 Sup. Ct. 532, 70 L. Ed. 973, as well as numerous cases from the lower Federal courts and the courts of certain of our sister states. [United States Fidelity & Guaranty Co. v. United States (C. C. A., 4th), 12 Fed. (2d) 1021; United States v. Randall (C. C. A., 2nd), 58 Fed. (2d) 193; United States v. Warnell (C. C. A., 5th), 67 Fed. (2d) 831; City of St. Cloud v. Willenbring (Minn.), 261 N. W. 585; State v. Estabrook, 29 Kan. 739.] These cases make it clear that in determining whether a bond is one of forfeiture or one of indemnity we must be guided by the intent of the Legislature as evidenced by the language of the statute under which the bond is given.

Recurring now to the specific provisions of Section 19: What then did the Legislature mean by saying that the bond should stand as security for the payment of taxes and fees? Included among the taxes and fees so secured are, of course, those payable to the State directly, but there are also other taxes and fees "provided for herein." Section 24 of the act provides for license charges to be fixed by and paid to counties, and Section 25 of the Amended Act of 1935 (Laws of 1935, p. 267, Mo. Stat. Ann., sec. 4525g-29, p. 4689) provides for license fees to be collected by counties and municipal corporations. Certainly such taxes and license fees are to be included in those specified in Section 19. Assume that a licensee has breached his bond by violating some minor State regulation and has also breached it by failing to pay some local fee authorized under the act. In this situation, if the bond be construed as one of forfeiture, would the governmental unit which first sued be permitted to collect the whole amount of the bond leaving the other without remedy? Would not such a construction lead to an unseemly race between various governmental agencies for priority in obtaining and collecting judgments?

Considering the language of the act in regard to "fines, penalties and forfeitures," we think such language reasonably construed can mean only that where a fine, penalty or forfeiture is imposed upon a licensee because he has violated some term of the act or some regula-

tion lawfully made thereunder, the amount of such fine, penalty or forfeiture may be collected from him and his surety by suit on the bond. So construed, is not the bond one of indemnity only? For consider, if a licensee be fined $500 for a violation of the act and the State elects to collect the fine by imprisoning the defendant until it is paid, or by issuing a general *fi. fa.* and levying it upon his lands and chattels, only the amount of the $500 fine plus the costs could be collected. If, however, the bond is to be construed as one of forfeiture, then the State might elect to collect the fine by suit against the surety under the bond, in which event it would recover $2000. Can this sort of inconsistent result have been intended by the Legislature? We think not.

Respondent contends, however, that the present bond has a peculiar hybrid nature. As security for the payment of taxes, fees, fines, penalties, etc., under the last clause of Section 19, it is an indemnity bond; as to the remainder of its condition, it is a bond of forfeiture. In support of its contention that such a dual character of bond is possible, respondent cites Eagle Indemnity Co. v. United States (C. C. A., 4th), 22 Fed. (2d) 388; and Runnels v. Lasswell (Mo. App.), 272 S. W. 1032. We do not hold that a bond of such dual character could not be written. But, is this bond one of that nature?

Again, we recall the provisions of Section 19 which make the bond stand as security for the collection of fines and penalties which are assessed for violation of the act. [See Sec. 43 in the original act and the amendment thereto, Laws of 1935, p. 267, Mo. Stat. Ann. 4525g-48, p. 4689.] It is to be noted that the fines and penalties so assessed cover all violations of the act and the regulations lawfully made thereunder. In this connection the following language used by the Supreme Court of Kansas in State v. Estabrook, supra, is of great persuasive force:

"When a druggist violates his bond, the proper damage, we suppose, would be just the loss sustained by the state by reason of such breach; and as the law makes the acts which constitute a breach of the bond a criminal offense, and subjects the druggist to fine or imprisonment, we suppose the loss to the state would be just the amount of the costs and expenses necessarily incurred in the prosecution of the druggist for his violation of the law, together with the costs and expenses necessarily incurred in enforcing the judgment, whether the judgment be for a fine or for imprisonment, and also the fine itself, if that should be imposed upon the druggist."

We are not called upon to decide and do not decide whether the cost of imprisoning a convicted licensee in the county jail would be a proper element of such damages. But certainly the amount of a fine imposed plus accrued court costs in the criminal proceeding would be elements to be considered.

In this connection it is also worthy of note that the Legislature enpowered the Supervisor of Liquor Control to suspend the license of a licensee for any violation of the act (see Secs. 13 and 26), and that the statute does not require the licensee to give a new bond at the end of the period of suspension. Now if the violation which brings about suspension be construed to forfeit the whole of the penal sum of the bond, that instrument would become worthless as security for future performance of the licensee's duties, and, during the residuum of the year for which he is licensed after the end of the period of suspension, he would, in effect, be operating without bond—an anomalous situation which the Legislature could not have intended to create.

In conclusion, we are irresistibly forced to construe this bond as one of indemnity and not one of forfeiture. The learned trial court therefore erred in holding that it belonged to the latter class. This conclusion is not at all inconsistent with our holding in the Wipke case, supra. In that case we found it necessary to eliminate Section 19 and to decide that the bond there given was governed solely by Section 13a, in order to reach the conclusion that the bond there before us was one of forfeiture. Implied in that holding is the opinion that a bond governed by Section 19, as this one is, would be a bond of indemnity.

Appellants contend that the provisions of the Liquor Control Act of 1933 and the acts amendatory thereto are unconstitutional and void, because the title to said law, while descending to particulars, does not contain reference to the matter of bonds. This precise question was before us in the Wipke case, supra, and was there decided adversely to the contention of appellants. In addition to what we said in the Wipke case, we may point out that the title of the original act contains the following language: ''Providing for the issuance of licenses for the manufacture, brewing and sale, both at wholesale and retail of intoxicating liquor.'' We believe that the provisions for the granting of licenses by necessary implication include the setting up of machinery by which they are to be obtained and the prescription of conditions precedent to their obtention, and that the requiremert of a bond as such condition is a necessary incident to the provision of the license itself.

Appellants make certain other attacks upon the constitutionality of the present act, but they are all based upon the assumption that the bond, contrary to appellants' principal contention, should be held to be one of forfeiture. None of these attacks could be levied upon the requirement of the bond as a bond of indemnity only. Hence it is unnecessary for us to pass upon such questions and, in accordance with the general rule, we refuse to rule upon constitutional issues unless they are necessary for the decision of the case.

As we have held the present bond to be a bond of indemnity, and as there is no evidence whatever in the record as to any actual damage to the State growing out of the breach here alleged, there is no question which calls for a retrial of the issues. Upon all of the evidence and the uncontradicted and conceded facts shown in the record the judgment below, as a matter of law, should have been for the defendants. The judgment must, therefore, be reversed. It is so ordered. All concur.