STATE OF MISSOURI, at the Relation of the STATE BOARD OF MEDIATION, Relator, v. ELMER L. PIGG, Comptroller of the State of Missouri, Respondent, No. 42660—244 S. W. (2d) 75.

Court en Banc, November 26, 1951.

Rehearing Denied, December 17, 1951.

*Daniel C. Rogers* for relator.

800

*J. E. Taylor,* Attorney General, *John R. Baty* and *Arthur M. O'Keefe,* Assistant Attorneys General, for respondent.

804

806

*Cobbs, Blake, Armstrong, Teasdale & Roos* amicus curiae.

*Clif Langsdale* and *Malcolm L. Bartley* for Missouri State Federation of Labor, A. F. of L; *Harry C. Clark, Everett E. Cotter* and *Morris J. Levin* for Missouri State Industrial Union Council, C. I. O., amici curiae.

DALTON, J.—This is an original proceeding in mandamus. Relator seeks to compel the State Comptroller to approve and certify for payment relator's "requisition (dated April 20, 1951) for the salaries, per diem and travel expenses of its board members and employees, and office rent for its board headquarters in Jefferson City, Missouri in the total amount of $1100.38."

Respondent defends on the ground that Chapter 295 RSMo 1949, which provides for the appointment of persons to serve as a state board of mediation, fixes their compensation, provides for their expenses and designates their powers, is invalid and unconstitutional and the relator has no "legal official existence or lawful capacity to incur the expenses aforesaid or any obligation payable out of the treasury of the State of Missouri."

Respondent relies upon numerous provisions of the state and federal constitutions hereinafter referred to and upon alleged conflict "with the National Labor Relations Act of 1935, 49 Stat. 449, 29 U. S. C., Sec. 151, et seq., 29 U. S. C. A.; Sec. 151, et seq., as amended by the Labor Management Relations Act of 1947, 61 Stat., Secs. 136 to 161, 29 U. S. C. (Supp. III), Secs. 141-197, 29 U. S. C. A., Sec. 141-197."

Respondent further says that the appropriation act, Laws 1949, p. 76, Sec. 4.293 is invalid, illegal and unconstitutional and in violation of Article IV, Sec. 28, Constitution of Missouri, 1945, because relator had no legal existence and no appropriation could legally be made for and on account of relator. Respondent specifically attacks on numerous constitutional grounds sections 295.080, 295.090, 295.120, 295.130, 295.140, 295.150, 295.160, 295.170, 295.180, 295.200

(all references are to RSMo 1949, unless otherwise specified). Concerning the remaining sections of Chapter 295, respondent says that "all of the sections of said Chapter 295 are dependent on each other and are inseparable as to their connection, meaning and effect; that without the inclusion of" the questioned sections, or any of them, the General Assembly would not have enacted any of the provisions of Chapter 295; and that because of the unconstitutionality and invalidity of the sections directly and specifically questioned, or any of them, all of the remaining provisions and sections of said Chapter 295 were and are inoperative, void and of no effect.

The facts upon which this action is based are not in dispute. The act in question, commonly known as the King-Thompson Act, was passed by the sixty-fourth General Assembly and approved by the Governor May 19, 1947. Laws 1947, Vol. I, p. 358. It was entitled "An act to provide for the mediation of labor disputes in public utilities; to create a board of mediation and to provide for the qualifications, powers, duties, compensation of the members of such board; to provide for the seizure and operation of public utilities by the state in order to insure continuous operation, to provide for the enforcement of this act and to prescribe penalties for any violation of this act." After the effective date of the act a state board of mediation was appointed and began to function as such. Thereafter, on March 19, 1951 the attorney general gave an opinion that the act was unconstitutional and void. On April 3, 1951, the attorney general advised respondent that he "should not approve for payment the payroll and expense accounts of the State Board of Mediation which have accrued after the opinion was given." The opinion, in part stated: "In the instant case there is no doubt that the Legislature enacted a statute providing for a State Board of Mediation and that the Governor, under authority of that statute, appointed members of such Board. The members of the State Board of Mediation, under color of authority of the statute and of the appointment, have in good faith held their offices and discharged the duties thereof. Until March 19, 1951, neither the members of the State Board of Mediation nor you had ever been advised either by this department or by a court that the King-Thompson Act was unconstitutional. On that date you, as Comptroller, and the members of the State Board of Mediation were notified that the law under which the Board was operating was unconstitutional."

Acting upon the advice of the attorney general the respondent refused to approve and certify for payment the items and amounts listed in the mentioned requisition. Respondent's return admits that he refused and still refuses to approve and certify for payment the items and amount of the requisition, but alleges that he has acted upon the written opinion and advice of the attorney general that Chapter 295 is unconstitutional and void. He admits "that,

except for the unconstitutionality and invalidity of said Chapter 295, and the provisions and sections thereof as heretofore and hereinafter set forth, the items and amount as shown by said requisition marked Relator's Exhibit A would have been correct, for a lawful purpose and properly to have been approved and certified by respondent for payment, and legally payable out of the treasury of the State of Missouri.''

In considering the alleged unconstitutionality of Chapter 295, it must be remembered that, ''Only such persons as are in some way prejudiced by an unconstitutional law can complain of it.'' State v. Seebold, 192 Mo. 720, 731, 91 S. W. 491; State ex rel. Wiles v. Williams, 232 Mo. 56, 64-71, 133 S. W. 1, and cases cited. ''Ordinarily a public officer may not question the constitutionality of a statute as a defense to mandamus to compel him to perform a ministerial duty.'' State ex rel. S. S. Kresge Co. v. Howard, 357 Mo. 302, 208 S. W. (2d) 247, 249. The reason being that he has no greater interest than that of any other citizen in the constitutional questions which he invokes. State ex rel. Wiles v. Williams, supra, 232 Mo. 56, 64, 133 S. W. 1; State ex rel. Thompson v. Jones, 328 Mo. 267, 41 S. W. (2d) 393, 396. In this case the alleged unconstitutionality of Chapter 295 RSMo 1949 is a proper defense, because Sec. 33.200 RSMo 1949 provides that if the comptroller shall knowingly certify a claim for payment by the auditor, ''not authorized by law, he shall, upon conviction thereof, be deemed guilty of a felony.'' Upon the attorney general's advice that the payment of relator's salaries and expenses was unauthorized, the respondent was justified in refusing (pending an opinion of this court) to approve and certify the items listed in the requisition. State ex rel. S. S. Kresge Co. v. Howard, supra, 208 S. W. (2d) 247, 249.

It is apparent that the issue presented is whether relator did have ''legal official existence'' and lawful capacity to incur expenses and permit salaries to accrue so that the items listed in the requisition are valid obligations payable out of the state treasury and may be approved and certified by respondent without civil or criminal liability to himself.

It should be noticed that this action is not brought for the purpose of reviewing any action or order of the state board of mediation. No such action or order is directly involved. The validity of no labor contract is called in question. The facts presented involve no strike or lockout and no judgment of any court pertaining to any proceeding under Chapter 295. The seizure of no property of a utility is involved. No question is presented concerning the application of any penalties under the act. No labor union, utility, employee or employer directly affected by the act is a party to the action. No one complains that any proceeding under the act has infringed upon any right granted by either the state or federal constitutions.

The cause is presented here solely upon the factual background of respondent's refusal to approve and certify, under the facts stated, the salaries and expenses in question here. It is solely against this factual background that respondent urges the invalidity and unconstitutionality of Chapter 295 and of each and every provision thereof.

Relator and respondent have briefed and submitted this cause upon the theory that, in this proceeding, this court must and should pass upon the constitutionality of each and every section of Chapter 295 and should finally determine the validity of each section under all factual situations that might or could arise. Briefs on behalf of interested parties as amici curiae have been filed, towit, the brief of Associated Industries of Missouri in support of the constitutionality of the act and the brief of the Missouri State Federation of Labor, A. F. L. and the Missouri State Industrial Union Council, C. I. O., contending that the act is unconstitutional. In effect the parties seek an advisory opinion concerning the validity of each and every section contained in Chapter 295.

██ It is well settled that constitutional questions will not be determined, unless their determination is essential to a proper determination of the case presented. State v. Vienup, 347 Mo. 382, 147 S. W. (2d) 627, 631; State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 S. W. (2d) 809, 816; 16 C. J. S. 207, Sec. 94. We have no authority to give advisory opinions on constitutional questions affecting, or which may affect, the rights of persons who are not parties to the action. Until such persons are in court and the issues are directly presented and necessarily involved such issues will not be decided. Watson Seminary v. Pike County Court, 149 Mo. 57, 72, 50 S. W. 880; Burnetta v. Marceline Coal Co., 180 Mo. 241, 251, 79 S. W. 136.

In view of the conclusions we have reached it would be improper in this proceeding to determine the validity of several sections of the act against which numerous assignments of unconstitutionality have been directed. We have decided that parts of Chapter 295 are clearly severable and valid, particularly those sections directly affecting relator, its legal existence, powers, and duties. This conclusion is sufficient for a determination of the issues here presented and we may not properly determine the validity of some of the remaining sections of the chapter.

Except as being dependent upon and inseparable in their connection, meaning and effect with the sections specifically and directly attacked on constitutional grounds, respondent makes no direct attack upon sections 295.010 to 295.070. Section 295.010 contains a declaration of state policy. Section 295.020 defines certain specific terms used in the act. Section 295.030 provides for the appointment of a State Board of Mediation, the number of members, their qualifications and terms of office and the matter of vacancies. Section

295.050 fixes the duties of the chairman of the board. Section 295.060 fixes the compensation of board members and provides for their traveling and other expenses. Section 295.070 defines the powers and duties of the board.

 Section 295.080 is the first section of the chapter to be specifically attacked. It provides for action. by the board in case of certain labor disputes, as follows: "1. Upon receipt of notice of any labor dispute between parties subject to this chapter, the board shall require such parties to keep it advised as to the progress of negotiations therein. 2. Upon application of either party to a labor dispute or upon its own motion the board may fix a time and place for a conference between the parties to the dispute and the board or its representative, upon the issues involved in the labor dispute and shall take whatever steps it•deems expedient to bring about a settlement of the dispute including assisting in negotiating and drafting a settlement agreement. 3. It shall be the duty of all parties to a labor dispute to respond to the summons of· the board for joint or several conferences with it or with its representatives and to continue in such conference until excused by the board or its representative."

Respondent contends that this section sets up a method of mediation in *conflict* with Title II of the Labor Management Relations Act, especially Sec. 203(b) thereof [29 U. S. C. A. Sec. 173(b)], which provides for mediation by the Federal Mediation and Conciliation Service of labor disputes in industry affecting commerce; and that being in conflict with a federal statute enacted under the provisions of the federal constitution (Section 8, Article I and Article VI) it is unconstitutional and void. Respondent insists that "we would have the anomalous situation of two separate and distinct mediation services attempting to bring the participants in a labor dispute to an agreement." Respondent's theory is that the state act provides for compulsory "mediation", since Sec. 295.080 requires the board to lend its services upon being notified by either management or the employees of the existence of a dispute. Respondent argues that "there is always a possibility of jurisdictional conflict" between the state and federal services in attempting to bring the participants in a labor dispute to an agreement.

There can be no doubt that the public utilities mentioned in Section 295.020 are subject to the provisions of the Labor Management Relations Act of 1947, which was enacted under the commerce clause of the constitution of the United States. Amalgamated Ass'n. of Street, Electric Ry. & Motor Coach Employees of America v. Wisconsin Employment Relations Board, 340 U. S. 383, 71 S. Ct. 359, 95 L. Ed. 364, 372. However, the provisions of Sec. 295.080 for the mere participation in mediation conferences do not point to any necessary conflict between this section and the cited provision of Labor Management Relations Act. This is particularly so in view

of certain provisions of the latter act. Section 202(c) of the Labor Management Relations Act, 29 U. S. C. A. 172(c), in part, provides: "The Director may establish suitable procedures for cooperation with State and local mediation agencies." Section 203(b) [29 U. S. C. A. 173(b)] of the same act, in part, provides: "The Director and the Service are directed to avoid attempting to mediate disputes which would have only a minor effect on interstate commerce if State or other conciliation services are available to the parties."

In footnotes 23 and 25 to the recent opinion of the Supreme Court of the United States in Amalgamated Ass'n. of Street, Electric Ry. & Motor Coach Employees of America v. Wisconsin Employment Relations Board, supra, 95 L. Ed. 364, 377, the court refers to specific provisions of the federal act "for examples of congressional direction as to the role that states were to play in the area of labor regulation covered by the Federal Act." The court also refers to Section 10(a) of the 1947 Act, 29 U. S. C. (Supp. III) Sec. 160(a) and points out that "A proviso of §10(a) authorizes cession of jurisdiction to the states only where the state law is consistent with the federal legislation. This insures that the national labor policy will not be thwarted even in the predominently local enterprises to which the proviso applies." And see annotation 174 A. L. R. 1051, 1053, 1071.

We find no necessary conflict between Sec. 295.080 and the cited provisions of the federal act. It is apparent that the federal statute recognizes and sanctions cooperation with state and local mediation agencies, where the state law is consistent with the federal legislation. The purpose of Section 295.080 is to facilitate a settlement of labor disputes upon a voluntary agreement of the parties through collective bargaining. No provision of this section tends to force an agreement of the parties. It seeks merely to aid the parties in reaching a voluntary settlement agreement. Respondent concedes that "the basic policy of the National Labor Relations Act as amended by the Labor Management Relations Act is to promote voluntary labor agreements through collective bargaining." This section is consistent with that act.

Section 295.090 deals with "collective bargaining labor agreements hereafter entered into," and requires them to be reduced to writing, fixes their minimum duration at one year, provides for their continuance from year to year, unless either or both parties thereto inform the other in writing of the specific changes desired to be made therein. A copy of "such demands" is required to be filed with the state board of mediation.

Respondent contends that Sec. 295.090 is in direct conflict with Secs. 7, 8(a) (5), 8(b) (3) and 8(d) of the Labor Management Relations Act of 1947; that the section denies to utility employees the right of free collective bargaining through representatives of their own choosing; and that the section "by its terms, substance and

effect, on its face is void, and violates the provisions of Secs. 2, 8, 9 and 10 of Article I of the Constitution of Missouri, 1945, and violates the provisions of the 1st and 14th Amendments to the Constitution of the United States.''

In view of the conclusions we have reached as to severability, it will not be necessary to determine the constitutionality of this section. No powers or duties of relator are directly involved. The only part of the section referring to relator is the requirement for the filing of a copy of ''such demands'' with relator. No such issue is before us. No factual background for the application of this section is presented. The issues involved in the present case do not require a determination of the matters presented by respondent.

Section 295.100 dealing with changes in labor agreements and Sec. 295.110 dealing with changes in employment terms in the absence of labor contracts and providing for the filing of copies of demands and desired changes with the State Board of Mediation are not specifically questioned in pleadings and brief and need not be considered.

 Respondent contends that Secs. 295.120 to 295.170, inclusive, in providing for a public hearing panel, are in conflict with the Labor Management Relations Act (no specific sections are referred to); and that these sections ''are an unlawful delegation of legislative power to members of the public hearing panels provided for therein.'' Sections 295.120 to 295.170 provide for public hearing panels, for the selection of members thereof, designate their powers, provide for hearings, deal with the matter of appearance in person or by counsel, provide for notice of hearings and for the selection of party representatives, and require the panel to file with the governor, in writing, a report setting forth a statement of the controversy, a resume of the evidence submitted to it and its recommendations based thereon. In the event of failure of either the utility or the employees to select representatives, such appointments may be made by the state board of mediation. The proceedings may not ''supersede voluntary arbitration.''· The state board of mediation is not mentioned in Secs. 295.130, 295.140 or 295.150. Section 295.160 states the circumstances under which the state board is empowered to designate members of the hearing panels. Section 295.170 provides that, where voluntary arbitration is a part of the contract between the disputing parties and the ''disputing parties cannot agree, the state board of mediation shall then enforce the compulsory arbitration as provided.'' Whether or not the act or any of its sections provide for compulsory ''arbitration'', within the ordinary meaning of that word, is a disputed legal question. If by ''compulsory arbitration'' is meant that, if the parties cannot agree, a contract is drawn for them which they are forced to accept without their consent, no ''compulsory arbitration'' is provided by these sections. The

statutes do grant the public hearing panels power to expose to public view the respective positions taken by the parties and the facts underlying the dispute. There is, however, no legal compulsion to force acceptance of the views or recommendations of the panels. Their conclusions, unless voluntarily accepted and agreed upon by the parties to the dispute, remain nothing more than "recommendations", which is the term by which these conclusions are referred to in Sec. 295.180. Also, see Sec. 295.210.

With reference to these several provisions, Secs. 295.120 to 295.170, respondent says, "While the provisions of the Missouri act relating to the public hearing panel do not set up a method of compulsory arbitration in the strict sense of the term, still for all intent and purposes the result of the hearings before the public hearing panels is the same as that of a compulsory arbitration board. The only difference is in the method of enforcement. Under our act it is left to public opinion, while under the compulsory arbitration statutes the decision of the board is absolute. That enforcement by public opinion is potent and effective is evidenced by the statement in Senate Report 105 on page 1126. That report, in speaking of the fact-finding board under the National Emergency part of the Labor Management Relations Act, said (Leg. Hist. of the Labor Management Relations Act, 1947, page 408) : 'In most instances the force of public opinion should make itself sufficiently felt in this period to bring about a peaceful determination of the controversy.' " Respondent, in effect, argues that the force of public opinion resulting from public hearing panels is as damaging to the right of free collective bargaining as compulsory arbitration boards.

Respondent further says that the Labor Management Relations Act provides for a system of free collective bargaining, where the "terms and conditions of employment are fixed by voluntary agreement between employers and bargaining representatives of employees." Respondent contends that the procedure by which the state may step in and designate the representatives of either the employer or employees to appear before the public hearing panel and may bring in outside parties to represent the employees in all matters concerning the conditions of employment *abrogates* the constitutional right of employees to be represented by persons of their own choosing; and that, *when the process of seizure by the state is brought into action and coupled with the outlawing of the right to strike,* the ultimate result is a denial of the right to bargain collectively. It is apparent that the sections now under consideration do not deny the right of collective bargaining. The hearings do not result in a compulsory bargain or contract, but in a recommendation. Employees do have the right to be represented at the hearings by persons of their own choosing, if they elect to do so. Since it is in effect conceded that the federal act and this part of the state act rely upon the force of public

opinion to induce the parties to arrive at a voluntary agreement, we fail to find any necessary conflict between these sections and the federal act.

With reference to the alleged unlawful delegation of legislative power to members of the public hearing panels, respondent says that these sections are void by reason of conflict with Sec. 1, Art. II of the Constitution of Missouri, 1945, which provides for three departments of government and for the separation of powers. Respondent's theory is that the public hearing panels exercise legislative authority which has been delegated to them; and that "without limitation or direction, the statute gives to the members of such panels the very broadest discretion to *determine* the wages, hours and working conditions which *should be applied* and permitted in a given utility." (Italics ours), (p. 85). Respondent further says that "notwithstanding the clear requirements that a delegation of legislative power must be accompanied by standards and guidance, Secs. 295.120 to 295.180 do not set forth any standards, criterions, patterns or guides to be followed by the public hearing panels in carrying out their duties under the said sections." However, if no legislative power has in fact been delegated to the public hearing panels and if no power to arbitrate, determine and settle labor disputes has in fact been granted to them, then the position of respondent is not well taken. Neither the board nor the panels have any authority under the act to put these panel recommendations concerning wages, hours and working conditions into effect without the voluntary acceptance and agreement of the parties. The authority delegated is not legislative, but administrative. The delegation of power to hear the parties, to review the facts and to make recommendations which bind no one does not amount to the delegation of legislative power. Sec. 42 Am. Jur. 334, Public Administrative Law, Sec. 43. Respondent concedes that "the Missouri Act does not make the report and recommendations of the hearing panel binding on either party to the dispute." Respondent relies on cases such as State v. Traffic Telephone Workers Federation (N. J.), 66 Atl. (2d) 616, 619, where the state statute provided for a board of arbitration which was authorized to hold hearings, find facts and "to promulgate a written decision and order upon the issue or issues." The finding, decision and order of the board was given binding and conclusive effect, subject to review on appeal. The findings and recommendations of the public hearing panels provided by the statutes in question here have no such binding and conclusive effect and they are not subject to the infirmity mentioned.

In addition to Sec. 295.090, respondent's chief attack is directed to Secs. 295.180 and 295.200 which are referred to as the seizure and anti-strike sections. We think the sections governing the existence, powers and duties of the State Board of Mediation and

provisions governing the existence and work of the public hearing panels are severable, as stated, and without regard to the validity of Secs. 295.090, 295.180, and 295.200. Section 295.180 provides that, "should either the utility or its employees refuse to accept and abide by the recommendations made pursuant to the provisions of this chapter and as a result thereof the effective operation of a public utility be threatened or interrupted", or in the event of a lockout, strike or work stoppage which, in the opinion of the governor, threatens to impair the operation of the utility so as to interfere with the public interest, health and welfare, he "is authorized, to take immediate possession of the plant, equipment or facility for the use and operation by the state of Missouri in the public interest." "Such power and authority may be exercised by the governor through such department or agency of the government as he may designate," as stated in the second subdivision of the section to which reference is had for its terms. Section 295.190 authorizes the governor to prescribe the necessary rules and regulations to carry out the provisions of Chapter 295.

Paragraph 1 of Sec. 295.200 provides: "It shall be unlawful for any person, employee, or representative as defined in this chapter to call, incite, support or participate in any strike or concerted refusal to work for any utility or for the state after any plant, equipment or facility has been taken over by the state under this chapter, as means of enforcing any demands against the utility or against the state." Other paragraphs provide for specific penalties. Paragraph 6 states that "the courts of this state shall have power to enforce by injunction or other legal or equitable remedies any provisions of this chapter or any rule or regulation prescribed by the governor hereunder." In the event that any public utility engages in a lockout which brings about a work stoppage, it is provided in paragraph 5 "that if, upon any investigation, supported by competent evidence, by the state board of mediation, it shall appear that any public utility has refused to bargain collectively in good faith with its employees over the terms and conditions of employment, said state board of mediation shall certify such record and proceedings to the public service commission, * * *" for such action, as in said paragraph, provided. It will be noticed that Secs. 295.180 to 295.200, inclusive, make only a single reference to the State Mediation Board and that is in paragraph 5 of Sec. 295.200. No other provision fixes any duties or imposes any obligations on the state board of mediation, or directly concerns it, or its powers or duties.

With reference to Sec. 295.180 respondent contends that, in making provision for seizure, the General Assembly has made an unlawful delegation of legislative power and in violation of Sec. 1, Article II of the Constitution of Missouri 1945; that the delegation of the power of seizure is accompanied by no sufficient standards, patterns, or

guides; that Sec. 295.180 "by its terms, substance and effect, is void on its face, and violates the provisions of Sec. 13 of Article I of the Constitution of Missouri, 1945, and violates the provisions of Sec. 10 of Article I of the Constitution of the United States," because seizure, without regard to the governmental franchise or permit under which the utility is operating, is an impairment of the obligation of contract; that "in providing that a public utility may be seized by the governor of Missouri when a strike is threatened in such utility," the section is in conflict with the Labor Management Relations Act and is unconstitutional because it violates Sec. 8 of Article I and Article VI of the Constitution of the United States; that the effect of seizure is a denial to utilities employees of their right to organize and bargain collectively through representatives of their own choosing and is in conflict with Art. I, ▮▮▮ Sec. 29 of the Constitution of Missouri, 1945; that the section is unconstitutional and void as an exercise of police power since this power cannot be used as a vehicle for the destruction and obliteration of constitutional guarantees or to support statutes in conflict with federal legislation; and that "the State of Missouri after seizure of a public utility does not become an 'employer' within the meaning of the National Labor Relations Act of 1935 as amended by the Labor Management Relations Act of 1947," and is not exempted from its provisions.

With reference to Sec. 295.200, respondent contends that, in making it unlawful for employees of public utilities to strike, the section is in conflict with the Labor Management Relations Act, a controlling federal statute; that, in providing penalties for employees who strike and utilities which refuse to bargain collectively in good faith with employees, it is in conflict with National Labor Relations Act and violates Sec. 8 of Art. I and Art. VI of the Constitution of the United States; that the right to bargain collectively includes the right to strike and, in prohibiting strikes, the section conflicts with Art. I, Sec. 29 of the Constitution of Missouri, 1945; that Sec. 295.200 "by its terms, substance and effect, on its face is void, and violates the provisions of Secs. 8, 9 and 10 of Art. I of the Constitution of Missouri, 1945, and the 1st and 14th amendments to the Constitution of the United States;" that the said section "by its terms, substance and effect, on its face is void, and violates the provisions of Secs. 2, 8, 9 and 10 of Art. I of the Constitution of Missouri, 1945, and the 1st, 8th, 13th and 14th amendments to the Constitution of the United States;" that Sec. 295.200(1), is a denial of freedom of speech, freedom of assemblage and equal protection of the laws; that the penal provisions of Sec. 295.200 provide for the imposition of excessive fines; that Sec. 295.200(1) imposes a form of compulsory service or involuntary servitude; and that Sec. 295.200(2) RSMo 1949, takes property without due process, interferes with freedom of contract, and denies to employees equal protection of the laws.

It will be noted that none of these assignments with reference to the validity of Secs. 295.180 and 295.200 directly concern the existence, powers and duties of the State Board of Mediation, instead they deal with matters which may or may not arise after the State Board of Mediation and the public hearing panels have fully discharged all statutory powers and duties. Further, if we are right on the issue of severability, it is immaterial to the issues in this case whether these sections are constitutional or not. As stated, no seizure, strike, lockout or penalties are here involved. We are concerned only with a determination of the issues between relator and respondent. Accordingly, we should not here further review respondent's arguments in support of his assignments as to the unconstitutionality of Sec. 295.180 and of Sec. 295.200. In this connection, we may say that no attack and no reference is made to that part of Sec. 295.200 which mentions the State Board of Mediation and provides for certain investigations and the certifying of certain matters to the public service commission.

Finally, respondent contends that Secs. 295.080, 295.090, 295.120 to 295.170, inclusive, 295.180 and 295.200 ''are not separable, and since all and each of them are unconstitutional the entire chapter 295 * * * is unconstitutional.''

Section 1.140 states the applicable rule as follows: ''The provisions of every statute shall be severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.''

The rule is stated in State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 224 S. W. (2d) 996, 1001, as follows: ''It is generally true if the invalid provision of a statute and the residue thereof are wholly independent of each other, readily separable, and completely distinct; and if the residue is of itself complete, sensible and capable of being executed that the invalid provision will fall and the residue of the statute will stand. * * * The fact that the residue of an act remaining after a portion has been declared invalid may be complete in and of itself is not always sufficient to sustain it. If the invalid portion is so connected with the residue of the statute as to furnish the consideration for the enactment of the residue and as to warrant the belief that they were intended as a whole and that the Legislature would not have passed the part remaining had it known the other part would be held invalid, then the

entire act must fall." And see 50 Am. Jur. 354, Statutes, Sec. 353; 11 Am. Jur. 834, Const. Law, Secs. 152 and 155.

In Cooley's Constitutional Limitations, 8th Ed., Vol. I, page 362, the rule is stated thus: "If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus made dependent, conditional, or connected must fall with them."

Respondent presents his position, as follows: "It is apparent that the legislature meant to deal only with those labor disputes which are a threat to the welfare and health of the people. Such a threat exists only when the service of the public utility is impaired or stopped. The principal way that this comes about is by a strike or lockout of the employees of the utility. The mere peaceful collective bargaining and mediation of labor disputes does not in any way affect the public, and it is only when the contract has expired and the employees strike or the utility causes a lockout is there a hardship upon the people of this state. The Missouri law in its very essence is an anti-strike law. The very purpose of the act is to insure the continuation of the operation of the utility. * * * Mediation by itself would not insure the continued operation of the utility; seizure by the state without the anti-strike provision would not remedy the situation; the public hearing panel, while it would probably delay a strike or lockout or shorten their duration, would not of itself guarantee the continued operation. Therefore, all of these features are a necessary part of the whole scheme, and it is apparent the legislature would not have passed the King-Thompson Act if it thought that any of these sections was unconstitutional and unenforceable because the elimination of any of them vitiates the act to such an extent that the desired purpose cannot be accomplished."

In determining the matter of severability, it has been said: "The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is

invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid." State ex rel. Audrain County v. Hackmann, 275 Mo. 534, 205 S. W. 12, 14; 59 C. J. 642, Sec. 206.

An inspection of Chapter 295 shows that it consists of two separate and distinct parts. The object of the first part of the chapter is to prevent strikes in public utilities by conciliation and mediation. For that purpose the statute establishes the state board of mediation and provides for the public hearing panels. The object of Secs. 295.180 and 295.200 is to prevent strikes in such utilities in emergencies where mediation and conciliation fails. In such case, seizure and operation by the State is provided for, pending settlement of the dispute. The act is both a mediation law and a seizure and anti-strike law.

We have heretofore reviewed the sections of the chapter which have not been specifically questioned and we have passed upon the validity of certain sections, subject to the question of the invalidity of the whole act. As stated, Secs. 295.180 and 295.200 deal with problems which may or may not arise dependent upon the refusal of either the employees or the utility to accept the recommendations of the public hearing panels. It is apparent, we believe, that the part of the chapter dealing with the State Board of Mediation and the public hearing panels is in no wise dependent upon Sec. 295.090, or upon Secs. 295.180 and 295.200, although these later sections are dependent upon the sections providing for mediation and public hearing panels.

Regardless of the terms of contract, seizure, anti-strike and penalty provisions, the conciliation and mediation provisions, if operative, are sufficient to accomplish their own proper purposes. We hold that they relate to a distinct purpose, towit, the voluntary settlement of labor disputes by peaceable means without force or compulsion; and that this purpose is not dependent upon the seizure, anti-strike and penalty provisions of the act, but independent thereof. Nor are the provisions with reference to the existence, powers and duties of the state mediation board and the public hearing panels directly connected with and dependent upon the provisions of Sec. 295.090 with reference to labor contracts. Regardless of the validity or invalidity of Secs. 295.090, 295.180 and 295.200, the sections relating to the creation of the state board of mediation and fixing compensation, powers and duties and providing for expenses and for public hearing panels are in no wise altered, their scope broadened, or their meaning changed. If the sections relating to the state board of mediation are severable from the seizure, anti-strike, penalty and contract provisions as mentioned, it is immaterial to respondent whether these sections of the chapter are valid or invalid, constitutional or unconstitutional, since his rights, under the facts of this case,

would be the same in any event. See Arnold v. Hanna, 315 Mo. 823, 290 S. W. 416, 424(16), judgment affirmed 48 S. Ct. 212, 276 U. S. 591, 72 L. Ed. 721.

Our conclusion is that the sections dealing directly with the existence, powers, duties and expenses of the state board of mediation and the establishment and duties of the public hearing panels are not so essentially and inseparably connected with, or so dependent upon Secs. 295.090, 295.180 and 295.200 that it can be presumed the legislature would not have enacted these valid sections of the chapter, regardless of the validity or invalidity of the three mentioned sections. We must and do hold that, regardless of the validity of the three mentioned sections which are so vigorously attacked, the remaining parts of the chapter, as referred to, provide a complete, sensible and valid enactment, consistent with the state and federal constitutions and with the cited provisions of the existing federal labor legislation; and that such portion of the chapter is capable of being carried into execution as intended by the Legislature. Relator is entitled to the relief sought.

In ruling the issue presented for decision, we express no opinion and intend no suggestion as to the validity or invalidity of Secs. 295.090, 295.180 and 295.200:

For reasons stated, our alternative writ of mandamus is made peremptory. All concur except *Tipton, J.,* dubitante.